**Fay M. CAMPBELL, Plaintiff–Appellant,**

**v.**

**HEWITT, COLEMAN & ASSOCIATES, INCORPORATED; Peoples Security Life Insurance Company, Defendants–Appellees,**

**and**

**Interiors, Incorporated, Defendant.**

**No. 92–1023.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 29, 1992.

Decided April 12, 1994.

are unable in this case to determine whether the district court granted summary judgment based on a consideration of the relevant facts or whether the district court granted summary judgment based on purely procedural grounds. Therefore, rather than review the grant of summary judgment *de novo* and either affirm or reverse, in this case we vacate the order of the district court and remand for further proceedings consistent with this opinion.

**ARGUED:** Clarence Rauch Wise, Wise & Tunstall, Greenwood, SC, for appellant. Frank Huger Gibbes, III, Gibbes & Clarkson, P.A., Greenville, SC, for appellee Hewitt, Coleman; William Francis Marion, Jr., Haynsworth, Marion, McKay & Guerard, Greenville, SC, for appellee Peoples Sec. Life. **ON BRIEF:** Robert E. Pruitt, Jr., Hite & Pruitt, Abbeville, SC, for appellant. Deborah Casey Brown, Gibbes & Clarkson, P.A., Greenville, SC, for appellee Hewitt, Coleman.

Before WIDENER and LUTTIG, Circuit Judges, and DOUMAR, United States District Judge for the Eastern District of Virginia, sitting by designation.

Vacated and remanded by published opinion. Judge WIDENER wrote the opinion, in which Judge DOUMAR joined. Judge LUTTIG wrote a concurring opinion.

## OPINION

WIDENER, Circuit Judge:

■ This appeal arises from the district court's grant of summary judgment to defendants Hewitt, Coleman & Associates, Inc. (Hewitt, Coleman) and People's Security Life Insurance Company (People's).[1] While we normally review summary judgments *de novo, see Overstreet v. Kentucky Cent. Life Ins. Co.,* 950 F.2d 931, 938 (4th Cir.1991), we

## I.

Mrs. Campbell was an employee of Interiors, Inc. (Interiors), a South Carolina Corporation, and was a beneficiary of Interiors' Employees Group Health Plan (the Plan), established on February 1, 1989. Under the Plan, once an employee satisfied a $250 deductible, the Plan paid 80% of the employee's first $5,000 of eligible medical expenses and 100% of eligible medical expenses thereafter. The Plan Summary, which described these benefits, stated that the Plan was funded by employee and employer contributions and that Hewitt, Coleman was the third party administrator of the Plan. As third party administrator Hewitt, Coleman would perform Plan related administrative functions on behalf of Interiors, including the payment of claims. Though not disclosed in the Plan Summary, so far as more modest and thus more numerous claims were concerned, the Plan basically was at least partially self-insured by Interiors. The Administrative Agreement, not the Summary, provided that contributions to the Trust were used to pay claims and to pay premiums for excess insurance coverage that Interiors purchased from People's on behalf of the Trust. The insurance contract provided that if incurred and paid eligible medical bills for a covered person exceeded $5,000 then People's would reimburse the Trust for payments exceeding

---

1. Mrs. Campbell has appealed the denial of her motion for reconsideration of judgment under Fed.R.Civ.P. 59(a)(2) and 59(e). Generally decisions under Rule 59(a)(2) are not appealable and appeal should be taken from the original judgment. *See* 11 Wright & Miller, *Federal Practice and Procedure,* § 2818. However, if a party erroneously appeals the denial of a Rule 59(a)(2) denial, courts normally will treat the appeal as

being from the original judgment rather than dismiss the appeal on technical grounds. *See Foman v. Davis,* 371 U.S. 178, 181, 83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962); Wright & Miller § 2818. Accordingly, we review the original grant of summary judgment and do not review the denial of the motion for reconsideration of judgment.

$5,000 up to $1,000,000. However, the Administration Agreement provided that if a claim for payment exceeded $15,000 for any covered individual, then Hewitt, Coleman would automatically notify People's before payment and People's would direct Hewitt, Coleman whether to pay the claim.

On February 26, 1989, Mrs. Campbell was seriously injured in an automobile accident and consequently incurred substantial medical bills. In April 1989 Hewitt, Coleman first received notice of Mrs. Campbell's medical expenses when it received a medical bill through the mail. On May 11, 1989, Hewitt, Coleman sent a notice and claim form to Mrs. Campbell stating that certain information was needed to process her claim and requesting that she complete the employee section of the claim form and *provide information regarding her accident* (or incident, record is illegible). Apparently receiving no response from Mrs. Campbell, Hewitt, Coleman sent a second notice on June 7, 1989, requesting that Mrs. Campbell complete the employee section of the claim form and *provide information regarding her auto insurance carrier.* The May 11th and June 7th notices are also different in the total charge ($74,648 and $_____); provider (Anderson Memorial Hospital and various); and dates of services. Because of the different information requested on the first and second notices, Hewitt, Coleman, despite Mrs. Campbell's failure to respond, obviously received from some source some information regarding Mrs. Campbell's accident. Claiming it received no response to the second notice, Hewitt, Coleman called Mrs. Campbell on August 23, 1989, and mailed a copy of the June 7 notice to her on August 24, 1989.

Meanwhile, on August 11, 1989, Mrs. Campbell wrote a letter to Hewitt, Coleman stating the name, address, and telephone number of her auto insurance carrier, and enclosed a form showing no other insurance. Although dated August 11, Hewitt, Coleman claims that it received both the letter and the completed claim form indicating that no other insurance was involved on September 14, 1989. Having received this information, Hewitt, Coleman stated that it finally would have been ready to pay Mrs. Campbell's

claim. However, because Interiors had gone into receivership on September 7, 1989, the defendants claim there were no assets in the Trust and Hewitt, Coleman did not pay Mrs. Campbell's claim. Hewitt, Coleman claims that it also did not notify People's of Mrs. Campbell's claim because People's contract for excess coverage with Interiors automatically terminated when Interiors went into receivership. Although paid-up premiums provided coverage through September 7, 1989, under the terms of the contract People's claims it was not liable for Mrs. Campbell's claim because it had not been incurred and paid prior to the date of termination.

Seeking to have her medical bills paid, Mrs. Campbell filed this case in South Carolina's Court of Common Pleas on April 3, 1990. In one claim, Mrs. Campbell alleged that Peoples was obligated to cover her medical expenses by virtue of the excess insurance coverage that Peoples provided to the Plan. In a second claim, Mrs. Campbell alleged that if Peoples had failed to pay because of untimely notice then Hewitt, Coleman was obligated to cover her medical expenses because Hewitt, Coleman, as third party administrator, breached its duty to timely submit her medical claims to Peoples. Because the Plan qualified as an employee welfare plan within the meaning of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461, the defendants removed the action to the United States District Court for the District of South Carolina on May 4, 1990.

After answers denying liability were filed, the parties proceeded to file interrogatories. In her answers filed on July 5, 1990, Mrs. Campbell stated that she timely had submitted all required claim forms to Hewitt, Coleman and that either Hewitt, Coleman had not properly processed her claim or People's had improperly failed to pay her claim. In its answers, Hewitt, Coleman stated that Mrs. Campbell had failed to timely submit written notice of injury, proof of loss, and information regarding details of the accident and other automobile insurance coverage. People's, in its answers, stated that to the best of its knowledge and belief no claim had been filed for Mrs. Campbell's medical bills and

that under the terms of its contract with the Plan its liability terminated when Interiors went into receivership on September 7, 1989. Finally, in supplemental answers filed on January 14, 1991, Mrs. Campbell stated that the plan summary did not disclose the plan's source of funding and that she was misled as to the circumstances that would result in a denial or loss of benefits because the Plan Summary did not comply with the requirements of 29 U.S.C. § 1022(b) and 29 C.F.R. §§ 2520.102–2(b) & 3(1). Consequently, Mrs. Campbell claims that People's, who allegedly prepared the Plan Summary, and Hewitt, Coleman, who distributed the Plan Summary, are liable for her losses.

On February 19 and March 14, 1991, People's and Hewitt, Coleman, respectively, filed motions for summary judgment pursuant to Fed.R.Civ.P. 56. Mrs. Campbell did not respond to the motions, and on October 17, 1991, the district court granted the motions without opinion or other explanation by stamping them "GRANTED WITHOUT OPPOSITION FILED." Mrs. Campbell timely filed a motion for reconsideration of judgment arguing that the district court should have given her 10 days' notice that it was going to decide the motions or that the district court should have granted a hearing on the motions. The district court, noting that Mrs. Campbell had not filed a response to the motions for summary judgment, found both the motions for reconsideration to be without merit and denied them. Mrs. Campbell now appeals.

## II.

■ Because the district court only stamped the motions "GRANTED WITHOUT OPPOSITION FILED," without any further explanation, we are unable to discern whether the district court based its decision on a careful consideration of the record or on Mrs. Campbell's failure to respond to the motions. Although district courts do not have to make findings of fact and conclusions of law when deciding summary judgment motions, see Fed.R.Civ.P. 52(a), we are of opinion that the circumstances of this case warrant a remand to allow the district court to "undertake a critical review of the relevant facts ...." *Sine v. Local No. 992 Intern. Broth. of Teamsters,* 644 F.2d 997, 1004 (4th Cir.), *cert. denied,* 454 U.S. 965, 102 S.Ct. 507, 70 L.Ed.2d 381 (1981).

■ A motion for summary judgment should only be granted when "there is no genuine issue as to any material fact...." Fed.R.Civ.P. 56(c). When ruling on a summary judgment motion, a court "is obligated to search the record and independently determine whether or not a genuine issue of fact exists." *See Jiminez v. Dreis & Krump Mfg. Co.,* 736 F.2d 51, 53 (2d Cir.1984). Furthermore, a court should not grant summary judgment "unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances." *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Sur. Co.,* 381 F.2d 245, 249 (4th Cir.1967). We note that Local Rule 12.06, mentioned by the district court in its order denying reconsideration, provides that if there is no memorandum filed in opposition to a motion, "the court will decide the matter on the record."

■ A party moving for summary judgment must prove that no genuine issue exists as to any material fact and that he is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). If he goes forward and supports his motion with post-pleading material, then the non-moving party cannot rest on his pleadings and generally must take some positive action in response. *See* Fed.R.Civ.P. 56(e); *Atkinson v. Bass,* 579 F.2d 865, 866 (4th Cir.), *cert. denied,* 439 U.S. 1003, 99 S.Ct. 615, 58 L.Ed.2d 679 (1978). While the non-moving party runs a great risk by not responding, such positive action is not required in all instances because the court still may only grant summary judgment if appropriate. Fed.R.Civ.P. 56(e). In determining if summary judgment is appropriate, the court should look to the movant's own papers in support of its summary judgment motion because they may demonstrate that a genuine issue exists as to a material fact. *See Drexel v. Union Prescription Ctrs., Inc.,* 582 F.2d 781, 790 (3d Cir.1978). The court should also determine if the record of filed depositions, answers to interrogatories, ad-

missions, and affidavits, demonstrates that a genuine issue exists as to any material fact. See Fed.R.Civ.P. 56(c) (listing items other than pleadings for court to consider); Fed. R.Civ.P. 56(e) (stating that adverse party may respond "by affidavits or as otherwise provided in this rule"); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . . .").

In this case, the record before the district court consisted of more than Mrs. Campbell's pleadings because she had filed both answers and supplemental answers in response to interrogatories. Although Mrs. Campbell did not file these in response to the motions for summary judgment, the district court should have considered them when determining whether a genuine issue existed as to any material fact. Furthermore, the district court should have considered Mrs. Campbell's allegations that People's had prepared the Plan Summary and determined whether the Plan Summary complied with ERISA, and the effect if it did not. Although Mrs. Campbell may not have formally pleaded these allegations, courts are not necessarily bound by the formal issues framed in the pleadings when ruling upon a motion for summary judgment. See 10A Wright & Miller, *Federal Practice and Procedure* § 2721 (stating that court should ascertain issues of fact contained in pleadings and then consider any other triable issues of fact suggested by post-pleading material).

Although we do not commend Mrs. Campbell's failure to respond, our holding that the judgment of the district court must be vacated is supported by reason as well as precedent.

A holding that summary judgment should have been entered against her merely because she failed to respond would be so abrupt it might well be suspect for that reason alone. We do not see that such action is mentioned in any rule of court. The Rules of Civil Procedure do not mention any like action, and no order was entered in this case placing Mrs. Campbell on terms either to respond or be defaulted. Indeed, Local Rule 12.06 requires that in such a case as this "the Court will decide the matter on the record," which we construe to mean, in the case of summary judgment, whether the record will support a determination that there is not a triable issue of fact. So we presume that the district court followed the local rule and decided the case on that basis notwithstanding the rather short order we have referred to above.

With those thoughts in mind, we are of opinion that this case is not different from *Sine, supra. Sine* was a case decided adversely to plaintiffs on summary judgment as is this case, and was a dispute between two individual teamsters and their local over a duty of fair representation. We stated the following as the reason for our reversal:

> While the district court did relate a few of the facts in part, we are unable to ascertain from the opinion just what facts it relied upon for determining that the plaintiff's claim against the unions was without merit. We feel that this is a case where the district court did not undertake a critical review of the relevant facts so as to give support to its conclusory finding.

644 F.2d at 1004.

There is no opinion in this case, and as in *Sine*, we are unable to ascertain from the district court's orders just what facts it relied upon for determining that the plaintiff's claim was without merit. The district court stated no facts on which it relied. Therefore, as in *Sine*, this case must be remanded for the district court to "undertake a critical review of the relevant facts so as to give support to its conclusory findings." 644 F.2d at 1004. And we do not suggest that its finding of no liability is correct.

### III.

We turn now to the issues suggested by the papers before us. On remand the district court should address at least the following questions, all of which are at least in part issues of fact: whether Hewitt, Coleman received proper notice from Mrs. Campbell; whether Hewitt, Coleman provided proper notice to People's; whether People's pre-

pared the Plan Summary; whether the Plan Summary satisfies the requirements of ERISA; and the effect of the plan summary. In addressing these issues the district court should consider the record before it and may seek "further factual development if it be so advised." *Sine,* 644 F.2d at 1004.

With respect to the issues mentioned just above, we note the following, presently expressing no opinion on the outcome of the case.

Hewitt, Coleman claims that Mrs. Campbell timely failed to furnish written notice of loss, proof of loss, and requested information pertaining to details of the accident and automobile insurance coverage. However, Hewitt, Coleman's own supporting material indicates that such is not necessarily the case. First, Hewitt, Coleman admits that it received a medical bill in April 1989 that first provided it with notice of Mrs. Campbell's claim. This medical bill might well suffice for both notice of loss and proof of loss. Second, Hewitt, Coleman's supporting material indicates that it received considerable information concerning the facts of Mrs. Campbell's accident from some source. Compare 5–11–89 notice with 6–7–89 notice. By Hewitt, Coleman's own admission Mrs. Campbell's auto insurance and her statement that People's was the only insurance involved was the only missing information, yet Hewitt, Coleman's own materials includes the letter from Mrs. Coleman, dated August 11, 1989, providing it with this information. While Hewitt, Coleman claims that it did not receive this letter until September 14, 1989, Mrs. Campbell claims that she timely submitted all information. Thus an obvious issue of fact exists for that item.

With regard to People's, Mrs. Campbell claims that one reason People's failed to pay was because Hewitt, Coleman failed to process properly her claim and notify People's. In support of its motion for summary judgment, People's claims it is not liable because it had not received a claim for Mrs. Campbell's medical bills before Interiors' receivership terminated its contract with the Plan.

While People's bases its defense solely on the timing of Interiors' receivership,[2] the question remains whether People's should be liable for Mrs. Campbell's claim if Hewitt, Coleman could have, should have, or did, give it notice of Mrs. Campbell's claim before September 7, 1989.

Under the terms of People's contract with Interiors, People's may be liable only for claims incurred and paid before the contract terminates. However, People's also had an Administrative Agreement with Hewitt, Coleman, that stated if it became apparent that a claim may exceed $15,000, then Hewitt, Coleman "shall automatically notify [People's] prior to the payment of any claim...." This Agreement also stated that if it appeared that a claim may exceed $25,000, then "[People's] shall review such large claims [both the 15,000 and 25,000 categories] and instruct Administrator concerning the approval and payment of claims from that point forward." This language may indicate that for such large claims, People's might have assumed more nearly a direct insurance obligation, rather than merely one of indemnity, because People's determined whether the claim should be paid in the first instance and thus directly controlled its own indemnity liability. It is apparent from Hewitt, Coleman's own supporting material that it knew on June 7, 1989 at the latest that Mrs. Campbell's medical bills were far in excess of $25,000. The notice of that date states "Total Charge $74,648.64." Thus a likely issue is whether it promptly should have notified People's of Mrs. Campbell's claim, or whether it did so notify People's.

Mrs. Campbell also alleges that People's prepared the Plan Summary, an allegation that People's has not denied, and that the Plan Summary does not comply with ERISA. Under regulations promulgated pursuant to ERISA "[t]he summary plan description shall identify any insurance company, trust fund, or any other institution, organization or entity which maintains a fund on behalf of the plan or through which the plan is funded or benefits are provided." 29 C.F.R.

2. People's states: "The Plaintiffs claims were not made or reported to People's until well after the policy terminated."

§ 2520.102–3(1). A review of the Plan Summary indicates that the Plan Summary does not inform the employees that People's obligation is an integral part of the Plan, although People's indirectly funds the Plan or provide benefits by reimbursing the Plan for payments in excess of $5,000 and actually assumes the position of reviewing claims and determining whether the claims should be paid when payments exceed $15,000. Furthermore, the Plan Summary does not inform Plan participants it is at least partially self-funded or that coverage will be limited if Interiors goes into receivership. The fact that the Plan was partially funded from Interiors' contributions might not necessarily indicate self-insurance, but could be construed to mean that Interiors' contributions were used to pay the premiums on a health insurance contract.

Because the subject of timeliness has involved a good bit of the argument in this case, another provision of the plan summary should not be overlooked. Under "GENERAL PROVISIONS", "NOTICE AND PROOF OF CLAIM," is the following language:

> However, when a covered person's coverage terminates for any reason, written proof of claim must be given to the employer within 90 days of the date of termination of coverage, provided that the Plan remains in force. However, upon termination of the Plan, final claims must be received within thirty (30) days of termination of the Plan.

Since a period of thirty days after the September 7, 1989 appointment of the receiver would have more than covered all of the critical events in this case, that provision requires explanation.

While the foregoing discussion of facts and questions appearing in Part III of this opinion may be strictly considered as musings because they are in large part a discussion of the facts which appear from the record in this case and some of the legal questions which come to mind, coming to only a few conclusions with respect to either, none of these things were mentioned in the orders of the district court, and we think that many or even most of them deserve its serious consideration on remand.

The judgment of the district court is vacated and the case is remanded for further development and consideration not inconsistent with this opinion.

### VACATED AND REMANDED.[3]

LUTTIG, Circuit Judge, concurring in the judgment:

Because I cannot ascertain from the district court's order the basis for its decision, I, too, would vacate the judgment below and remand for clarification. I do not, however, share the majority's views of the proper role of the federal courts in considering summary judgment motions, which, judging from its citations and the tone and substance of its reproach of the district court, are obviously based on the state of the law existing before the Supreme Court's decision in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Nor do I agree, either in substance or as a matter of proper appellate jurisdiction, with the majority's "musings" about the issues that should be addressed on remand. Accordingly, I concur only in the judgment of the court that the opinion below be vacated and the case remanded for clarification.

---

**3.** The use of the word "reproach," with its implications, in the sixth line of the text of the concurring opinion, is that of the concurring judge, not the majority, which does not reproach district courts, although it may not always agree with them. *See, Webster's 3rd New International Dictionary,* p. 1927.