UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DONALD K. PHILLIPS,
Plaintiff-Appellant,

v.

No. 95-1295

BARBARA S. NIELSEN, in both her
individual and official capacities,
Defendant-Appellee.

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Dennis W. Shedd, District Judge.
(CA-92-628-3-19)

Argued: March 7, 1996

Decided: October 18, 1996

Before MURNAGHAN and ERVIN, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Reversed and remanded by unpublished opinion. Senior Judge
Butzner wrote the opinion, in which Judge Murnaghan and Judge
Ervin joined.

_____

**COUNSEL**

**ARGUED:** James Lewis Mann Cromer, CROMER & MABRY,
Columbia, South Carolina, for Appellant. Vance J. Bettis, GIGNIL-
LIAT, SAVITZ & BETTIS, Columbia, South Carolina, for Appellee.
**ON BRIEF:** Craig L. Berman, Waltham, Massachusetts, for Appel-

lant. Ashley B. Abel, EDWARDS, BALLARD, BISHIP, STURM, CLARK & KEIM, P.A., Spartanburg, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

BUTZNER, Senior Circuit Judge:

In this action, based on 42 U.S.C. § 1983, alleging political retaliation, Donald Kent Phillips, a former employee of the South Carolina Department of Education, appeals the district court's summary judgment in favor of Barbara Nielsen, the South Carolina Superintendent of Education. The district court held that Phillips had been discharged solely because of his party affiliation. The court then concluded that under Elrod v. Burns, 427 U.S. 347, 367, 375 (1976), and Branti v. Finkel, 445 U.S. 507, 518 (1980), political affiliation was an appropriate requirement for Phillips's position and granted Nielsen's motion for summary judgment. In an alternative holding, the court determined that Nielsen was entitled to qualified immunity. We reverse because the record discloses genuine issues of material fact.

I

We review summary judgment de novo, construing all disputed facts and reasonable inferences in favor of the nonmoving party. Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is appropriate if after examining the entire record, including all depositions, answers to interrogatories, admissions, and affidavits, the court concludes that there exists no genuine issue of material fact. Fed. R. Civ. P. 56(c); see Campbell v. Hewitt, Coleman & Associates, Inc., 21 F.3d 52, 55-56 (4th Cir. 1994).

In November 1990, Nielsen, a Republican, ran against the Democratic incumbent, Dr. Charlie Williams, in an election for State Super-

2

intendent of Education. Nielsen campaigned on an antibureaucracy platform, pledging to streamline the Department of Education. Phillips, a Democrat, attended several debates between Nielsen and Williams. He took annual leave to chauffeur Williams to some campaign appearances. Mary Jackson Willis, who later became one of Nielsen's top-ranking advisors and Phillips's boss, saw Phillips at one of those appearances. Phillips put up signs for Williams and made a financial contribution to his re-election campaign.

Nielsen won the election and took office in January 1991. She immediately began implementing her campaign promise to restructure the Department. The top echelon of the Department under Williams consisted of several Deputy Superintendents of Education who reported directly to the Superintendent. The Deputy Superintendents supervised a level of Associate Superintendents, including Phillips, who in turn supervised a lower level of directors. Beginning in January 1991, Nielsen eliminated both the deputy superintendent and the associate superintendent positions. The former deputy and associate superintendents, including Phillips, were given jobs within the Department as interim "Special Assistants." Phillips, in his new position as Special Assistant had no substantial responsibilities, but he suffered no loss of pay.

Nielsen then decided to create seven new Senior Executive Assistant positions to assume the responsibilities that had previously been fulfilled by the Deputy and Associate Superintendents. Phillips submitted applications for three Senior Executive Assistant positions but was not selected. Nielsen did not select any of the individuals who had served as Deputy and Associate Superintendents under Williams.

By early June 1991, Phillips was experiencing increasing levels of job-related stress, which had the potential to exacerbate his existing heart condition. He also realized that he would lose retirement benefits if he waited to retire until after June 30, 1991. After numerous unsuccessful attempts to meet with Nielsen to discuss his future job prospects, Phillips submitted notice that he was retiring from the Department as of June 30, 1991.

Phillips, claiming constructive discharge, brought this suit against Nielsen in both her individual and official capacities. He alleged that

3

Nielsen's conduct violated the First and Fourteenth Amendments. Nielsen denied the complaint's allegations and filed a motion for summary judgment alleging that even if Phillips were constructively discharged, his discharge was lawful because he was a policymaker or confidential employee. Alternatively, Nielsen contended that she was entitled to qualified immunity because it was not clearly established in 1991 that an Associate Superintendent for Instruction was not a policymaker.

Phillips introduced the deposition testimony of Warner Montgomery, a consultant who worked on Nielsen's reorganization strategy. Montgomery testified that Nielsen told him on several occasions that she planned to get rid of "Charlie's Boys," who had "worked against her":

> She told me . . . when we had our first conversations before I started to work, that it was not anything that I had to worry with, that most of them [Charlie's Boys] had been reassigned and they would not be involved in anything and I was not to worry about it, but that it was her intention that they would not be part of the new organization, and she let me know that right off. . . .

Montgomery also testified that Nielsen compiled a list, known as the "Banana List," which included the names of many of "Charlie's Boys." Nielsen told Montgomery not to contact or discuss the reorganization with any individual on the list. Phillips's name was on the list. Nielsen testified that she had no recollection of preparing this list.

II

The parties stipulated that for the purposes of summary judgment Phillips was constructively discharged. After a hearing, the magistrate judge determined that because Phillips sought only monetary relief, his claim against Nielsen in her official capacity was barred. See Will v. Michigan Department of State Police, 491 U.S. 58, 70-71 (1989). Phillips has not appealed this ruling.

In her motion for summary judgment, Nielsen argued that Phillips lawfully could be discharged because of his political affiliation. She

4

relied on <u>Elrod v. Burns</u>, 427 U.S. 347 (1976), and <u>Branti v. Finkel</u>, 445 U.S. 507 (1980). The district court granted Nielsen's motion and dismissed the case. It held that the facts demonstrated that Phillips was a person who could be discharged under <u>Elrod-Branti</u>. The court alternatively held that Nielsen was entitled to qualified immunity because it was not clearly established that a person in Phillips's position could not be dismissed under <u>Elrod-Branti</u> .

III

It is well established that an individual is not stripped of his First Amendment rights simply because he is employed by a local, state, or federal government body. "Absent some reasonably appropriate requirement, government may not make public employment subject to the express condition of political beliefs or prescribed expression." <u>O'Hare Truck Service, Inc. v. City of Northlake</u> , 116 S. Ct. 2352, 2357 (1996). In fashioning legal standards for evaluating which restrictions are "reasonably appropriate" the Supreme Court has charted a course along two lines of inquiry: the <u>Elrod-Branti</u> standard for discrimination based on party affiliation and a balancing test for discrimination based on political speech. <u>See Pickering v. Board of Education</u>, 391 U.S. 568 (1968); <u>Connick v. Myers</u>, 461 U.S. 138, 147 (1983); <u>Givhan v. Western Five Consolidated School Dist.</u>, 439 U.S. 410, 415-16 (1979).

Political affiliation is a legitimate employment criterion only if the employee occupies a position for which affiliation is "an appropriate requirement for the effective performance of the public office involved." <u>Branti</u>, 445 U.S. at 518. This classification includes policymakers. Under the relatively flexible <u>Pickering-Connick-Givhan</u> standard, a court must balance "the interests of the [public employee], as a citizen, in commenting on matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." <u>Pickering</u> 391 U.S. at 568.

The primary issue in this type of employment case is the motive of the employer that prompted the constructive discharge. This court has issued the following instruction for resolution of a case alleging unlawful political discharge: "<u>First</u>,[if] the evidence raises genuine

5

issues as to the actual reason for an employee's discharge, that motivational issue must of course be resolved by the trier of fact. On that resolution, all else turns." Jones v. Dodson , 727 F.2d 1329, 1337 (4th Cir. 1984). The evidence discloses a genuine issue of material fact pertaining to Nielsen's motive for Phillips's constructive discharge. In her motion for summary judgment she alleged that Phillips, a Democrat, could be "lawfully dismissed because of his political affiliation." Relying on Branti, she claimed that Phillips's "party affiliation is an appropriate requirement for the effective performance of the public office" he held. Branti, 445 U.S. at 518.

Shortly after Phillips filed this action, Nielsen issued a press release which she intended to be a rebuttal to Phillips's allegations that he was constructively discharged because of his political affiliation and support of Williams. In the press release, Nielsen emphasized that her office was staffed without regard to political affiliation. She also asserted that some of the present top employees were Democrats. Her press release contained the following statements:

> The campaign ended in November, 1990. Period. My transition team was filled with Democrats and Republicans and I have never--NEVER--made hiring or promotion decisions based on politics. My restructuring and consideration were approved every step of the way by state personnel officers.

> My senior staff and office directors do include people who agree with my educational philosophy and agenda. This is an elected office so that's no surprise. But some of these jobs also are filled by people who worked for, and campaigned hard for, my predecessor and who worked for and campaigned for former Democratic governors and Democratic candidates. I'm also sure that some of these top Education staffers are Democrats, but I have never asked them because it's not important. Some of these jobs are filled by people who are NOT politically active.

On this summary judgment record it is difficult to reconcile the statements Nielsen authorized in her motion with the statements she made in her press release, and we are left with the conclusion that

6

there exists a genuine issue of material fact about Nielsen's motive. Our ruling today, however, pertains to summary judgment, and it is not intended to be pre-emptive. Perhaps Nielsen will be able to amplify her statements and clarify her meaning when the case is tried before a jury on remand.

Nielsen's alternative claim that she is entitled to qualified immunity under Elrod-Branti principles suffers the same defects. The standard for application of the doctrine of qualified immunity is the "objective reasonableness of an official's conduct with reference to clearly established law." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). It is not likely that a reasonable public employer would claim the need of compatible political affiliation on the part of an employee while at the same time disavowing political affiliation as a criterion for employment.

IV

The district court held that Phillips's evidence was insufficient to prove a violation of the First Amendment in retaliation for political speech, i.e., his support of Nielsen's opponent. Phillips controverts this finding in good faith, citing Montgomery's testimony, the "banana list," and Willis's knowledge of his help for Williams in the campaign. He emphasized the inferences that can be drawn in his favor from this evidence. We need not express, however, any opinion on this issue inasmuch as we have denied Nielsen's motion for summary judgment on other grounds. Phillips did not move for summary judgment, standing instead on his demand for a jury. Any expression of opinion, under these circumstances, would be dicta. When the case is tried, Phillips can present this claim.

We conclude that an opinion on another issue would be premature because the record with respect to South Carolina law has not been sufficiently developed. Phillips claims that he cannot be discharged because he was a career employee under South Carolina law, not a political appointee. Nielsen contends that federal, not state, law controls for First Amendment purposes. Both parties have cited numerous cases, none of which is precisely on point. The futility of assessing these arguments is that Phillips was transferred from one position to another without a reduction in pay. The parties have presented no

7

information on the question whether this transfer, allegedly a part of a departmental reorganization, is prohibited by South Carolina civil service law.

We have accepted for all other aspects of this summary judgment proceeding the parties' stipulation that Phillips was constructively discharged. This stipulation by its terms will not be effective at the trial for which we have remanded the case. We decline to accept this stipulation with respect to Phillips's civil service status after he was transferred, which involves a question of law. See Estate of Sandford v. Commissioner, 308 U.S. 39, 51 (1939). We believe the prudent course is to await further development of this issue on remand.

We dismiss without prejudice Phillips's assignment of error concerning the district court's exclusion in the summary judgment proceedings of Richard Gergel's letter.

REVERSED AND REMANDED

8