**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-1188**

NATASHA SINCLAIR,

              Plaintiff – Appellant,

        v.

MOBILE 360, INCORPORATED; AUTO ADVANTAGE; KEVIN GEAGAN;
GERALD ELDRIDGE,

              Defendants – Appellees.

**No. 09-1189**

MICHAEL A. KITCHEN,

              Plaintiff – Appellant,

         v.

MOBILE 360, INCORPORATED; AUTO ADVANTAGE; KEVIN GEAGAN;
GERALD ELDRIDGE,

              Defendants – Appellees.

Appeals from the United States District Court for the Western
District of North Carolina, at Asheville.  Dennis L. Howell,
Magistrate Judge.  (1:07-cv-00117-DLH)

Argued:  September 22, 2010           Decided:  March 3, 2011

Before WILKINSON, KING, and GREGORY, Circuit Judges.

Vacated and remanded by unpublished opinion. Judge King wrote the majority opinion, in which Judge Gregory joined. Judge Wilkinson wrote a dissenting opinion.

---

**ARGUED**: Philip J. Roth, Jr., MILLER MARSHALL ROTH, PC, Asheville, North Carolina, for Appellants. Kevin Patrick Kopp, Jacqueline Denise Grant, ROBERTS & STEVENS, PA, Asheville, North Carolina, for Appellees. **ON BRIEF**: Joel Shelton, Arden, North Carolina, for Appellants.

---

Unpublished opinions are not binding precedent in this circuit.

KING, Circuit Judge:

Natasha Sinclair and Michael Kitchen (collectively, the "Appellants") seek relief from the summary judgment award made against them in this civil action in the Western District of North Carolina.[1] Sinclair sued Mobile 360, Incorporated; Auto Advantage; Kevin Geagan; and Gerald Eldridge (collectively, the "Defendants"), alleging state and federal wage claims as well as a state law claim for breach of contract. In response, the Defendants lodged a third-party claim against Kitchen, who, in turn, filed a counterclaim against the Defendants. After discovery proceedings, two separate summary judgment motions were pursued, the first by Auto Advantage alone and the second by all of the Defendants. The second summary judgment motion was granted by the magistrate judge on January 16, 2009, and gives rise to this appeal. See Sinclair v. Mobile 360, Inc., No. 1:07-cv-00117 (W.D.N.C. Jan. 16, 2009) (the "Opinion").[2] As explained herein, the magistrate judge erred in failing to

---

[1] Pursuant to Local Rule 73.1 of the Western District of North Carolina, the parties stipulated to jurisdiction by a United States Magistrate Judge, who made the summary judgment rulings.

[2] The Opinion can be found at J.A. 835-55. (Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

3

consider pertinent materials in the record when awarding summary judgment to the Defendants. We therefore vacate and remand.

I.

In her amended complaint of June 4, 2008, Sinclair alleged that "Defendants Mobile 360 and Auto Advantage served as [Sinclair's] joint employers," Geagan was an "officer and owner of both Mobile 360 and Auto Advantage," and Eldridge was "an officer and/or owner of Mobile 360." J.A. 98-99.[3] The Defendants denied employing Sinclair and, without conceding that Sinclair had performed work for them, alleged that, if she performed any such work, it "was solely at the direction of, . . . and completely controlled by, Michael Kitchen, an independent contractor for Mobile 360." J.A. 131. Thus, the Defendants instituted their third-party claim against Kitchen. In reply, Kitchen denied being an independent contractor, alleging instead that "Defendants Mobile 360 and Auto Advantage served as Kitchen's joint employers." J.A. 111. Kitchen also denied hiring Sinclair, alleging that the Defendants had done so. Kitchen filed a separate counterclaim against the

_____

[3] Sinclair's initial complaint was filed in March 2007. Her amended complaint of June 2008 is the operative complaint in this appeal. It was prepared and filed by Sinclair's counsel of record at the time, Michael Wimer, Esq., of Asheville, North Carolina.

4

Defendants, realleging all (save one) of the claims pursued by Sinclair. Kitchen also alleged that he had been recruited by Geagan to work for both Auto Advantage and Mobile 360, that he had been trained at Auto Advantage, and that his paychecks were written by Auto Advantage.[4]

On May 12, 2008, after discovery was conducted, Auto Advantage filed the initial Federal Rule of Civil Procedure 56 motion for summary judgment (the "First Motion"), contending that, under the evidence, there was no relationship between it and Mobile 360, no employment relationships had been shown between it and either of the Appellants, and, as a matter of law, the Appellants' breach of contract claims were preempted by the Fair Labor Standards Act. On June 16, 2008, the Appellants, by counsel, responded to the First Motion by filing a joint response thereto (the "Counseled Response").

The Counseled Response contended that Sinclair and Kitchen both worked for Auto Advantage and that all factual assertions to the contrary were genuinely disputed. The Counseled Response included the affidavits of Sinclair and Kitchen, a deposition of

---

[4] Kitchen first filed his counterclaim on June 21, 2007. His amended counterclaim of June 4, 2008, is the operative counterclaim in this appeal. In defending against the third-party claim and pursuing his counterclaim against the Defendants, Kitchen was represented by lawyer Michael Wimer, who was then representing Sinclair as well.

Eldridge, and nine other exhibits ("Ex. A" through "Ex. I"). The Appellants' affidavits specified that they had each been recruited by Geagan and Eldridge to work for Auto Advantage and Mobile 360, that they had been trained by and performed work at Auto Advantage, and that they worked at the direction of both Geagan and Eldridge. In his affidavit, Kitchen averred that he was paid by Auto Advantage, specifying checks issued by that business.[5]

On June 30, 2008, Auto Advantage replied to the Counseled Response, contending, inter alia, that the invoices in "Ex. C" of the Response had been fabricated, that any payments by Auto Advantage to Mobile 360 were made on behalf of Geagan, and that the Appellants could not show that any of their work at issue had been performed for Auto Advantage ("Auto Advantage's Reply"). Oral argument on the First Motion was twice continued, once at the request of the Defendants and once again at the

_____

[5] The affidavits that were part of the Counseled Response also explained the relevance of the nine other exhibits, which were: "Ex. A" — a record of Sinclair's hours worked; "Ex. B" — a record of Kitchen's hours worked; "Ex. C" — invoices of Mobile 360 for work performed on customers' vehicles; "Ex. D" — checks from Auto Advantage to Mobile 360; "Ex. E" — checks from Auto Advantage to Kitchen; "Ex. F" — checks from Auto Advantage to other Mobile 360 employees; "Ex. G" — a check from Mobile 360 to Sinclair; "Ex. H" — a proposed release terminating Kitchen's independent contractor status (which Kitchen had declined to sign); and "Ex. I" — Mobile 360's amended interrogatory responses.

6

request of the Appellants. On August 8, 2008, three months after filing the First Motion, Auto Advantage withdrew such motion without explanation.[6]

Three months later, on November 21, 2008, the Defendants filed the second Rule 56 motion for summary judgment (the "Renewed Motion"), which was materially identical to the First Motion.[7] Along with the Renewed Motion, the Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 41(b) (the "Rule 41(b) Motion"), asserting that the Appellants had "engaged in conduct utterly inconsistent with the orderly administration of justice," J.A. 351, and claiming that the Appellants had "presented falsified evidence as well as provided incredulous and incredible testimony in what appears to be an effort to deceive the Court," J.A. 485.[8]

---

[6] Neither the Counseled Response nor Auto Advantage's Reply were ever withdrawn, and they remain of record in these proceedings.

[7] The only distinction between the First Motion and the Renewed Motion was that the Renewed Motion was made on behalf of all Defendants and included as exhibits Mobile 360's responses to the Appellants' separate interrogatories.

[8] Rule 41(b) provides, in pertinent part, that "[i]f the plaintiff fails . . . to comply with these rules . . . , a defendant may move to dismiss the action or any claim against it." The basis of the Defendants' Rule 41(b) Motion was apparently that the Appellants had failed to comply with the rules by presenting false evidence and "incredible testimony."

On December 5, 2008, the Appellants' lawyer in the underlying proceedings (Mr. Wimer) sought to withdraw from his representation, because the Appellants were demanding that he cease working on their behalf. On December 16, 2008, the magistrate judge conducted a hearing on Wimer's motion to withdraw, questioned him about the Renewed Motion and the Rule 41(b) Motion (which were pending), and observed that the Appellants' responses to those motions were due a week later. In that hearing, Wimer advised the magistrate judge — in terms that are important here — that

> after reviewing the motions[,] I think that a substantial amount of the work that needs to be done to file those [responses] was already performed in connection with the withdraw[n First Motion].

J.A. 504. Indeed, Wimer also advised the court that the Appellants were "aware of that." Id. At the conclusion of the hearing, the magistrate judge granted Wimer's motion to withdraw. The order granting withdrawal included a notice to the Appellants, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that in response to the Renewed Motion they "could file affidavits or unsworn declarations made under the penalty of perjury." J.A. 519.

A week later, on December 23, 2008, the Appellants, then proceeding pro se, responded separately to the pending motions (the "Pro Se Responses"). The Appellants submitted numerous

8

exhibits with their Pro Se Responses, most of which were copies of emails, written estimates, and checks. The Appellants did not, however, submit any additional affidavits or declarations seeking to explain the evidence. Rather, the Pro Se Responses asserted that the evidence "show[ed] a very clear Employee-Employer relationship and that Auto Advantage was indeed the Parent Company of Mobile 360." J.A. 522, 586. The Pro Se Responses did not reference the affidavits and exhibits contained in the Counseled Response, and made several new accusations, e.g., that the Defendants had threatened to stalk and poison the Appellants, and that lawyer Wimer had attempted to intimidate them into accepting a minuscule settlement. In her separate submission opposing the Rule 41(b) Motion, Sinclair accused the magistrate judge of being part of a conspiracy against the Appellants. None of these accusations were supported by any evidence.[9]

In reply to the Pro Se Responses to the Renewed Motion, the Defendants argued that the Appellants had failed to satisfy the provisions of Rule 56, in that they did not specify any material

---

[9] We note our disapproval of the various unsupported allegations made by the Appellants, which appear to be entirely inappropriate and perhaps sanctionable. Nonetheless, we are mindful that such conduct, even by pro se parties, does not preclude us from applying the controlling legal principles to the issues presented.

9

facts that were genuinely in dispute. The Defendants also asserted that the Appellants had failed to refute the evidence submitted with the Renewed Motion, which, according to the Defendants, demonstrated that no employer-employee relationship ever existed between any of the Defendants and either Sinclair or Kitchen.

The January 16, 2009 Opinion granting summary judgment to the Defendants on the Renewed Motion made no mention of either the Counseled Response or Auto Advantage's Reply (papers filed with respect to the First Motion). Furthermore, the magistrate judge struck the various exhibits submitted with the Pro Se Responses, ruling that they had not been properly filed by the pro se Appellants and could not be considered because they were not supported by explanatory affidavits or declarations. See Opinion 9-10. The Opinion concluded that, even if the exhibits had been properly submitted, there was no explanation of how they demonstrated any genuine issue of material fact. Id. at 10. The Opinion also observed that,

> [i]n search of admissible evidence favorable to Sinclair and Kitchen, the court has . . . reviewed the Amended Complaint and the Amended Counterclaim to determine whether those could be considered evidentiary. Close review of such pleadings reveals that such were not verified and cannot be considered as evidence in this case.

Id. at 10-11. The Opinion then adopted the facts spelled out in the Renewed Motion, to the extent the magistrate judge deemed

10

such facts corroborated by the Defendants' uncontroverted evidence. On those facts, the judge ruled — fatal to the Appellants' state and federal wage claims — that Mobile 360 and Auto Advantage "were entirely independent of each other," id. at 17, and that Kitchen was merely an independent contractor of Mobile 360 who had hired and supervised Sinclair, id. at 18-19. Additionally, the judge ruled that the Appellants' state law breach of contract claims were preempted by the Fair Labor Standards Act. Id. at 20. The Opinion therefore awarded summary judgment to the Defendants on all of the Appellants' claims, and dismissed the Defendants' third-party claim against Kitchen without prejudice. Id. at 21.[10]

---

[10] In addressing the Rule 41(b) Motion, the magistrate judge showed commendable restraint and explained that such motion

> involves allegations that the pro se litigants have falsified evidence and committed fraud upon the court. These allegations, if true, are troubling and could expose the pro se litigants to criminal prosecution. Rather than consider such troubling allegations, the court has concentrated on the merits in considering the summary judgment motion and whether genuine issues of material fact mandate trial.

Opinion 3 n.1. Additionally, after observing that the Appellants had made allegations in their Pro Se Responses impugning the integrity of the Defendants and their counsel, lawyer Wimer, and the magistrate judge himself, the judge struck "[s]uch unsupported and spurious contentions . . . from the pleadings as both impertinent and scandalous." Id. at 6-7 (citing Fed. R. Civ. P. 12(f)).

11

The Appellants have timely appealed from the adverse judgment. We have consolidated their appeals and possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

We review de novo a district court's award of summary judgment. See S.C. Green Party v. S.C. State Election Comm'n, 612 F.3d 752, 755 (4th Cir. 2010).

III.

A.

As a threshold matter, we recognize that Federal Rule of Civil Procedure 56 has twice been amended — effective on December 1, 2009, and December 1, 2010 — since the magistrate judge issued the Opinion of January 16, 2009, awarding summary judgment to the Defendants. Because the Supreme Court has not "specifie[d] otherwise," we must apply the amendments retroactively unless we determine that doing so "would be infeasible or work an injustice." Fed. R. Civ. P. 86(a)(2). Significantly, the 2010 amendments engendered considerable changes in relevant summary judgment procedures, including (as more fully explained below) changes that could affect the outcome of this appeal. See Fed. R. Civ. P. 56 advisory committee's note (clarifying that the 2010 amendments were

12

intended "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts," while leaving "[t]he standard for granting summary judgment . . . unchanged"). In these circumstances, it would "work an injustice" to decide this matter under the 2010 version of Rule 56, and we thus decline to do so. Rather, because the 2009 amendments have no substantive effect on the issues before us, we appropriately rely on the 2009 version of Rule 56 in rendering our decision.

As written in 2009, Rule 56 instructed that summary judgment should only be awarded "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2) (emphasis added). In contrast, subdivision (e)(2) of Rule 56 provided that, in opposing a properly supported summary judgment motion, the response to the motion "must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial."[11] The

---

[11] The version of Rule 56 in effect at the time of the January 16, 2009 Opinion contained the same subdivision (e)(2) and included, in its subdivision (c), the above-quoted language from the 2009 version's subdivision (c)(2).

federal courts have been in some disagreement as to whether, under Rule 56, a court is obliged to consider the materials "on file" in deciding whether a "genuine issue as to any material fact" is shown (as Rule 56(c)(2) indicates). Indeed, a majority of our sister circuits appear to have taken the view that a court, in assessing a summary judgment motion, may confine its consideration to materials submitted with and relied on in response to the motion (as Rule 56(e)(2) may contemplate).[12] Consistent with the majority view, subdivision (c)(3) of the 2010 version of Rule 56 now specifies that a "court need consider only the cited materials," though "it may consider other materials in the record." See Fed. R. Civ. P. 56 advisory

---

[12] At least seven of our sister circuits have weighed in on the apparent tension between the language in subdivisions (c)(2) and (e)(2) of Rule 56. The First Circuit has concluded that the materials "on file" should be considered by the district court in ruling on a summary judgment motion. See Stephanischen v. Merchs. Despatch Transp. Corp., 722 F.2d 922, 930 (1st Cir. 1983). The Second Circuit has decided that summary judgment cannot be awarded "on the ground that the nonmovant's papers failed to cite to the record unless the parties are given actual notice of the requirement." See Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 471 (2d Cir. 2002). Five other courts of appeals have taken the view that requiring a district court to review materials not relied on by the parties is unduly burdensome to the judiciary. See Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1029 (9th Cir. 2001); Adler v. Wal-Mart Stores Inc., 144 F.3d 664, 672 (10th Cir. 1998); Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994); L.S. Heath & Sons, Inc. v. AT&T Info. Sys., Inc., 9 F.3d 561, 567 (7th Cir. 1993); Guarino v. Brookfield Twp. Trs., 980 F.2d 399, 405 (6th Cir. 1992).

committee's note (explaining that the 2010 version's "[s]ubdivision (c)(3) reflects judicial opinions and local rules provisions stating that the court may decide a motion for summary judgment without undertaking an independent search of the record").[13]

On appeal, the Appellants contend that the district court erred when it awarded summary judgment to the Defendants, because it did not consider their Counseled Response. Specifically, the Appellants contend that, under the plain terms of Rule 56(c)(2) as it existed in 2009, a court assessing a summary judgment motion must consider the materials "on file," and the Counseled Response was "on file" in this case when summary judgment was awarded. The Defendants respond that it was the Appellants' burden, under Rule 56(e)(2), to bring the Counseled Response to the court's attention, and that there was

---

[13] It bears mentioning that, although subdivision (c)(3) of the 2010 version of Rule 56 seems unfavorable to the Appellants, other provisions could well be helpful to them. For example, where a party has failed to properly support or address an assertion of fact, "subdivision (e)(1) recognizes that the court may afford [the party] an opportunity to [do so,]" and "[s]ubdivision (e)(4) recognizes that [orders other than an award of summary judgment to the opposing party] may be appropriate." Fed. R. Civ. P. 56 advisory committee's note. Significantly, the Advisory Committee recognized that "[t]he choice among possible orders should be designed to encourage proper presentation of the record" and, of particular relevance here, that "the court may seek to reassure itself by some examination of the record before granting summary judgment against a pro se litigant." Id.

nothing preventing the Appellants from resubmitting, in response to the Renewed Motion, any exhibits that had been filed as part of the Counseled Response.[14]

### B.

One of our precedents on those aspects of a court record that should be considered in connection with a summary judgment motion was authored by our late and distinguished colleague, Judge Emory Widener. That 1994 decision, Campbell v. Hewitt, Coleman & Associates, Inc., recognized that, in assessing a summary judgment motion, a district court is obliged to consider its "entire record." 21 F.3d 52, 55 (4th Cir. 1994) (internal quotation marks omitted). The essential facts of the Campbell case were these: Mrs. Campbell, who was seriously injured in an automobile accident, sued in South Carolina state court to have medical bills paid under her employer-provided health plan. Id. at 54. Because the health plan qualified as an employee welfare plan within the meaning of ERISA, the action was removed to federal court. Id. The two defendants denied any liability and filed interrogatories, to which Campbell responded. Id. at 54-

---

[14] The Appellants make two additional contentions on appeal: first, that their Fifth Amendment rights were violated when their counsel was permitted to withdraw shortly before their responses to the Renewed Motion were due; and, second, that the district court's Roseboro instruction was legally incorrect and confusing. In disposing of this appeal, we need not address either of those contentions.

16

The defendants then filed motions for summary judgment, to which Campbell did not respond. Id. at 55. The district court summarily awarded such judgment to the defendants, simply stamping their motions "GRANTED WITHOUT OPPOSITION FILED." Id.

On appeal, we ruled that the district court had erred in failing to consider Mrs. Campbell's interrogatory answers — which were "on file" in the court record — in conjunction with its disposition of the summary judgment motion. See Campbell, 21 F.3d at 56. Judge Widener's opinion was predicated on and emphasized three principles:

- First, in terms important to this appeal, "[w]hen ruling on a summary judgment motion, a court is obligated to search the record and independently determine whether or not a genuine issue of fact exists," id. at 55 (internal quotation marks omitted);

- Second, "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances,'" id. (quoting Phx. Sav. & Loan, Inc., v. Aetna Cas. & Sur. Co., 381 F.2d 245, 249 (4th Cir. 1967)); and

- Third, "[t]he court should also determine if the record of filed depositions, answers to interrogatories, admissions, and affidavits, demonstrates that a genuine issue exists as to any material fact," id. at 55-56.

Applying these principles, we emphasized in Campbell that "the record before the district court consisted of more than Mrs. Campbell's pleadings because she had filed both answers and

17

supplemental answers in response to interrogatories." Id. at 56. As a result, the Campbell opinion concluded that, "[a]lthough Mrs. Campbell did not file these [interrogatory answers] in response to the motions for summary judgment, the district court should have considered them when determining whether a genuine issue existed as to any material fact." Id.

Mrs. Campbell's interrogatory responses are — assessed in context — strikingly similar to the Counseled Response that the district court did not consider in this case. Of additional significance in this appeal, the Appellants were proceeding pro se when the Renewed Motion was litigated and granted by the magistrate judge. Their appellate position concerning the court's failure to consider the Counseled Response is therefore substantially stronger than the position espoused by Campbell concerning her interrogatory responses. That is, going beyond the Campbell precedent, we are always obliged to construe liberally the contentions being pursued by pro se parties. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). Put succinctly, we impose on pro se litigants — even those who may be cantankerous or make extraneous and inappropriate assertions against their opponents or the court — "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus,

18

551 U.S. 89, 94 (2007).[15]  As such, where "the context . . . makes clear a litigant's essential grievance, the complainant's additional invocation of general legal principles need not detour the district court from resolving that which the litigant himself has shown to be his real concern." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).  Here, the Appellants' claims were made clear not only by the amended complaint, amended counterclaim, and Pro Se Responses, but also, and more importantly, by the Counseled Response.

## C.

In candor, a majority of the other circuits might prefer a view contrary to our Campbell decision, and that view may have since been ensconced in Rule 56 by way of the 2010 amendments. In any event, a careful assessment of the Counseled Response would not impose an unwarranted burden on the magistrate judge, for several reasons.  First and foremost, the Appellants were proceeding pro se, and they are entitled to the "less stringent standards" applicable to such litigants.  Second, the magistrate judge, prior to his Opinion awarding summary judgment to the Defendants, was on notice of the Counseled Response.  Indeed,

---

[15] Although we apply less stringent standards to pro se submissions, the principles applicable to our handling of pro se pleadings are not without limits.  See Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985) (observing that "[d]istrict judges are not mind readers").

the Counseled Response was specifically discussed at the hearing on the motion to withdraw. See J.A. 504 (lawyer Wimer advising court "I think that a substantial amount of the work that needs to be done to file those [responses] was already performed in connection with the withdraw[n First Motion]," and stating his clients were "aware of that"). Third, the Renewed Motion was materially identical to the First Motion. Fourth, the Counseled Response may address the contentions pursued in the Renewed Motion and place material factual questions genuinely at issue. Indeed, the Counseled Response directly addressed the relationship between Auto Advantage and Mobile 360, on the one hand, and the Appellants, on the other. Fifth, and finally, even though the First Motion was withdrawn, the Counseled Response and Auto Advantage's Reply were never withdrawn or stricken from the record. As a result, the Counseled Response remained "on file" in this case when summary judgment was awarded to the Defendants. In such circumstances, the award of summary judgment to the Defendants must be vacated under the applicable 2009 version of Rule 56.

IV.

Pursuant to the foregoing, we vacate the judgment of the district court and remand for such other and further proceedings as may be appropriate.

<u>VACATED AND REMANDED</u>

21

WILKINSON, Circuit Judge, dissenting:

Because I believe the current version of Federal Rule of Civil Procedure 56 applies to this case, I respectfully dissent from the majority's opinion.

I.

The previous version of Rule 56 stated that a summary judgment motion should be granted only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The "on file" language led to a circuit split as to whether a district court needed to look beyond the materials cited by the parties when ruling on summary judgment. This court adopted the minority view, placing an affirmative duty on courts to conduct an independent search of the record. See Campbell v. Hewitt, Coleman & Assocs., Inc., 21 F.3d 52, 55-56 (4th Cir. 1994).

However, the Federal Rules of Civil Procedure were amended in 2010, and these amendments eliminated the "on file" language from Rule 56. Fed. R. Civ. P. 56. Rule 56 now explicitly states that district courts "need consider only the cited materials" when ruling on summary judgment. Fed. R. Civ. P. 56(c)(3). And the current Rule 56 makes clear that parties are obligated to support their assertions with citations to the

22

record. Fed. R. Civ. P. 56(c)(1). If a party neglects this obligation and "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may: . . . (2) consider the fact undisputed for purposes of the motion; [and] (3) grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e).

As the Advisory Committee Notes explain, these changes "reflect[] judicial opinions and local rules provisions stating that the court may decide a motion for summary judgment without undertaking an independent search of the record." Fed. R. Civ. P. 56 advisory committee's note. Thus, the 2010 amendments rejected our minority position in Campbell in favor of the approach followed by the majority of the circuits that had considered the issue. Accordingly, under the current Rule 56, district courts need consult only those materials cited by the parties when ruling on summary judgment.

The district court here certainly satisfied the requirements of the current version of Rule 56. It had no duty to consider the uncited Counseled Response. Neither the majority nor the appellants dispute this. Accordingly, the central issue in this case -- whether the magistrate judge should have reviewed the Counseled Response -- is clearly

23

resolved in favor of the appellees under the current Rule 56. The critical question, therefore, is whether the 2010 amendments apply to this action.

II.

Rule 86(a) explains that amendments to the Federal Rules of Civil Procedure govern:

(1) proceedings in an action commenced after their effective date; and

(2) proceedings after that date in an action then pending unless:

(A) the Supreme Court specifies otherwise; or

(B) the court determines that applying them in a particular action would be infeasible or work an injustice.

The 2010 amendments took effect during the pendency of this appeal, on December 1, 2010. Accordingly, as the majority properly concludes, they apply to this case unless they "would be infeasible or work an injustice." Fed. R. Civ. P. 86(a)(2)(B). In other words, the presumptive position is that the new rules apply.

The relevant question then is whether the exception to this presumption applies -- whether applying the 2010 amendments "would be infeasible or work an injustice." Fed. R. Civ. P. 86(a)(2)(B). The majority's interpretation of this exception swallows the general rule. It argues that an injustice would

24

occur because the 2010 amendments might change the outcome of this case. If the test for "injustice" is whether the amendments could be outcome-determinative, then the amendments would never apply to any case to which they are relevant. But if the general rule that the amendments apply to pending cases is to have any force, then the amendments must apply to at least some cases where they would have an effect. After all, it makes no difference whether the 2010 amendments apply to situations where they would effect no change. Thus, the majority's view transforms Rule 86's presumption that the amendments apply to pending cases into a guarantee that they will not.

I respectfully offer a different interpretation of the Rule 86 exception, one consistent with its text and faithful to its purpose. This exception is equitable in nature, as evidenced by its use of the term "injustice." But a litigant with unclean hands is generally the last one to receive such generous treatment as that granted by this equitable exception. Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery, 324 U.S. 806, 814 (1945). And the appellants here are anything but deserving. They delayed the lower court proceedings at every turn. In fact, the case dragged on for almost two years, in substantial part due to the appellants' repeated requests for extensions and late amendments to their pleadings. Appellants then terminated their counsel at the

25

eleventh hour, a mere week before their summary judgment responses were due.

And, finally, the appellants made a litany of unsupported allegations in their responses to the motion to dismiss and motion for summary judgment, including the utterly unfounded assertions that "the Defendants had threatened to stalk and poison the Appellants," Majority Opinion at 9, and that the magistrate judge was engaged in a vast conspiracy against them. My fine colleagues are right to note that "[n]one of these accusations were supported by any evidence." Id.

Throughout the course of this misconduct, the magistrate judge exhibited commendable patience, even though, as the majority observes, appellants' conduct "appear[s] to be entirely inappropriate and perhaps sanctionable." Majority Opinion at 9 n.9. In fact, this may be the first time that this court has suggested that sanctions may be appropriate for a party's behavior and then given that same party the benefit of an equitable exception.

Additionally, the notions of injustice and equity embodied in Rule 86 seem to presume some reliance interest. But there is no professed reliance interest here. Appellants never discussed which version of Rule 56 applies to their case. Surely they were aware that the 2010 amendments would be going into effect just a few short months from oral argument. Indeed, in its

order of April 28, 2010, the Supreme Court publicly announced that the 2010 amendments "shall take effect on December 1, 2010, and shall govern . . . insofar as just and practicable, all proceedings then pending." Order of April 28, 2010. And yet appellants, though represented by counsel on appeal, apparently attached no importance to the question of whether the 2010 amendments would apply to their case and never once mentioned the matter.

Beyond the substantive legal arguments, the majority also seeks to excuse appellants' behavior because of their pro se status. But that frankly is unfair to pro se litigants. It is the unusual pro se litigant who makes baseless accusations of conspiracy and questions the integrity of the court. Moreover, appellants brought about their pro se status. They voluntarily terminated their attorney at the last minute with full knowledge that they would have to prepare the summary judgment responses on their own.

In any event, the appellants could not truly be said to be without assistance of counsel when they submitted their Pro Se Responses. Quite the contrary. They had at their disposal the Counseled Response -- the very same document they now seek to have considered on remand. And this Counseled Response contained their former attorney's legal arguments regarding the summary judgment motion. Therefore, while appellants

27

technically may have been pro se they were not without the assistance of counsel. All the appellants had to do was attach the Counseled Response to their Pro Se Responses, a task certainly within the competency of pro se litigants. But they failed to do so, and they now seek to blame the court for their oversight.

## III.

I am mystified as to why the equitable exception to the general rule should be invoked here. This exception is reserved for extraordinary circumstances -- when it is necessary to prevent "injustice." I submit respectfully that it is wrong for many reasons not to follow the presumptive counsel of the Federal Rules in this case. The injustice arises from applying the exception, and I regret that appellees and the trial court must suffer it. I would affirm the judgment of the district court.