**Polly EUBANKS, Plaintiff,**

v.

**PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant.**

**No. 1:03 CV 00777.**

United States District Court, M.D. North Carolina.

Sept. 2, 2004.

Henry T. Drake, Drake & Pleasant, Wadesboro, NC, for Plaintiff.

Stephen A. Dunn, Emanuel and Dunn, Raleigh, NC, for Defendant.

## MEMORANDUM OPINION

OSTEEN, District Judge.

Plaintiff Polly Eubanks initially filed this action in Richmond County Superior Court, and Defendant Prudential Insurance Company of America ("Prudential") subsequently filed a Notice of Removal, asserting federal question jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e) and (f). In response, Eubanks filed a Motion to Remand asserting lack of subject matter jurisdiction. Subsequently, Prudential filed a Motion for Summary Judgment followed shortly by Eubanks' Motion for Summary Judgment. For the reasons stated herein, Plaintiff's Motion to Remand will be denied, Plaintiff's Motion to Consider Plaintiff's Motion for Summary Judgment and Brief as Opposition to Defendant's Motion for Summary Judgment will be granted, Defendant's Motion for Summary Judgment will be granted, and Plaintiff's Motion for Summary Judgment will be denied.

## I. FACTUAL BACKGROUND

Plaintiff Polly Eubanks is a former employee of Parkdale Mills, Inc. ("Parkdale Mills") and was covered under the long term disability benefits plan funded under a group contract of insurance issued by Prudential to Parkdale Mills. The plan is regulated by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001–1461.

Eubanks first submitted a claim for disability benefits on approximately February 24, 1999. The Early Notice of Disability Absence and Attending Physician's Statement she submitted to support her claim indicated Eubanks had been absent from work since October 31, 1998. The cause of disability was identified as an injury resulting from a fall in Eubanks' home. The Attending Physician's Statement was provided by Dr. Joseph J. King, who diagnosed Eubanks with Spinal Stenosis Cervican and indicated that Eubanks was awaiting surgery. Eubanks subsequently reported that her surgery, a decompressive laminectomy, took place on February 23, 1999.

Eubanks' claim for long term disability benefits was approved by Prudential on March 25, 1999. Thereafter, Eubanks had two additional surgeries, a second decompressive laminectomy in September 1999 and a third procedure in August 2000. Following her third surgery, Dr. King informed Prudential on December 27, 2000, that Eubanks could only sit for one hour at a time, stand one-half hour at a time, and was limited in her ability to walk. He further noted that Eubanks was unable to engage in any type of work, though he did

not indicate the medical reasons for that opinion.

At Prudential's request, Eubanks was examined by an independent physician, Dr. Daniel J. Bernstein, on March 2, 2001. Although Dr. Bernstein indicated that he saw a "reasonable opportunity for her to return to some level of gainful employment," he ultimately concluded she was unable to work at the time. (Pence Aff. Ex. B at 141.) When asked by Prudential to "quantify Ms[.] Eubanks['] functional abilities based on the objective medical evidence within her records, her functional presentation, and your observations during your clinical examination," (*see id.* at 144), Dr. Bernstein did not respond.

In February 2002, Prudential obtained medical records from Dr. King indicating that Eubanks was last seen by him on October 23, 2000. Thereafter, Prudential sought a Comprehensive Claimant's Statement from Eubanks, that was eventually submitted to Prudential on May 3, 2002. Eubanks wrote that she had "a lot of pain in my lower left side of back. I also have pain in my left leg. My left leg feels numb." (*Id.* at 223.) She further stated that her condition impeded her ability to stand or sit for prolonged periods. (*Id.*)

Prudential forwarded Eubanks' latest response and the rest of her record to Dr. Gale Brown for an independent medical review. Dr. Brown concluded, after reviewing the file, though without a physical examination, that "some physical restrictions appear reasonable, but would not preclude Ms. Eubanks from working full-time at a sedentary-light occupation." (*Id.* at 236.) Based upon Dr. Brown's review and the record as a whole, Prudential terminated Eubanks' benefits effective August 1, 2002.

Notice of appeal was given by Eubanks' counsel on December 31, 2002. Soon thereafter, Eubanks submitted additional documents for Prudential's consideration, including: (1) a note from Dr. King, dated January 8, 2003, stating that Eubanks was permanently disabled; (2) a Functional Capacity Form completed by Dr. King, dated August 28, 2002, stating that Eubanks could perform sedentary duties; (3) an evaluation form by Dr. Blakney, dated August 2002, indicating that Eubanks was unable to sit or stand for extended periods; (4) records showing that Eubanks had visited Dr. Blakney six times from April 1999 through August 2002; and (5) a Social Security Notice and Disability Determination Rationale. Prudential responded by letter on February 20, 2003, stating that the additional documents were insufficient to reverse its prior determination.

## II. PROCEDURAL BACKGROUND

Eubanks originally filed this action on July 16, 2003, alleging various state law claims including violation of the Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75–1.1, willful and wanton engagement in unfair claim settlement practices in violation of N.C. Gen.Stat. § 58–63–15(11), and fraud. Subsequent to Prudential's removal to this court, Eubanks filed a motion to remand, and a motion to amend the complaint. Eubanks' motion to amend was allowed and Eubanks thereby incorporated a claim under ERISA as an alternative to the previously asserted state law claims.

On April 16, 2004, Prudential filed a motion for summary judgment. Eubanks did not file a document denominated as a "response" to Prudential's motion. Rather, Eubanks filed her own motion for summary judgment on April 19, 2004.

Prudential's motions to remand and for summary judgment and Eubanks' motions for summary judgment and to consider her brief in support of her motion for summary judgment as opposition to Pruden-

tial's motion for summary judgment are now before the court.

## III. ANALYSIS

### A. Eubanks' Motion to Remand

A lawsuit filed in state court is removable to federal court when federal subject matter jurisdiction is present. 28 U.S.C. § 1441(a). Removal is effected when a defendant files a notice of removal within 30 days after service of process. *Id.* § 1446(b). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

■ Ordinarily, when the cause of action rests on federal law, a claim arises under the laws of the United States, thereby conferring federal subject matter jurisdiction. In a few areas, though, federal law so dominates that litigants are required to pursue federal remedies rather than those provided by state law. The civil enforcement provisions of ERISA are among those federal laws with "extraordinary pre-emptive power." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987). Accordingly, state law claims falling within the ambit of 29 U.S.C. § 1144(a) of ERISA are preempted.

■ The preemption clause of ERISA states that "[e]xcept as provided in subsection (b) of this section, the provisions of this sub-chapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ...." 29 U.S.C. § 1144(a). A body of case law has developed exploring whether given state laws "relate" to employee benefit plans for purposes of ERISA preemption, but it is sufficient in this case to observe that courts have found preemption over claims for violation of unfair and deceptive trade practices acts and bad faith relating to the administration of employee benefit plans. *See Tri–State*

*Mach. Inc. v. Nationwide Life Ins. Co.*, 33 F.3d 309, 311 (4th Cir.1994) (holding that state law claims of breach of contract, breach of implied covenants of good faith and fair dealing, bad faith tort, insurance bad faith, and violation of the West Virginia Unfair Trade Practices Act against employer's health care insurer were preempted); *Lippard v. Unumprovident Corp.*, 261 F.Supp.2d 368, 375 (M.D.N.C. 2003) (holding that state law claims for breach of contract, detrimental reliance and estoppel, and unfair and deceptive trade practices against employer's disability plan insurer were preempted); *Coffman v. Metropolitan Life Ins. Co.*, 138 F.Supp.2d 764, 766–67 (S.D.W.Va.2001) (holding that unfair and deceptive trade practices claim against employer's long term disability insurer was preempted by ERISA). Therefore, because Eubanks' causes of action are aimed at Prudential's claims administration, and are in essence appeals for benefits under the plan or some equivalent compensation, Eubanks' state law claims are preempted by ERISA.

■ A "savings clause" in 29 U.S.C. § 1144(b)(2)(A) provides a limited exception to the preemption of 29 U.S.C. § 1144(a). Section 1144(b)(2)(A) states: "[e]xcept as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. 1144(b)(2)(A). The Supreme Court has enunciated a test for determining the applicability of the savings provision: "[f]irst, the state law must be specifically directed toward entities engaged in insurance. Second, ... the state law must substantially affect the risk pooling arrangement between the insurer and the insured." *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 342,

123 S.Ct. 1471, 1479, 155 L.Ed.2d 468 (2003).

Eubanks argues that Prudential has violated multiple provisions of N.C. Gen.Stat. 58–63–15(11), a provision enumerating unfair claim settlement practices, and that such violations constitute unfair and deceptive trade practices for purposes of N.C. Gen.Stat. 75–1.1. Although § 58–63–15(11) is directed toward the administration of claims policies, this fact in itself does not satisfy the first prong of the *Miller* test. The Court has eschewed a formalistic view of the *Miller* test and has focused instead on the substantive purpose of the state law claims. *Aetna Health Inc. v. Davila*, 542 U.S. ——, 124 S.Ct. 2488, 2500, 159 L.Ed.2d 312 (2004) ("Under ordinary principles of conflict pre-emption, then, even a state law that can arguably be characterized as 'regulating insurance' will be preempted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme."). Whether Eubanks is pursuing her state law claims in an attempt to recover her benefits or their equivalent, her claims fall within ERISA's remedial scheme and are, therefore, preempted.

■ Having decided the issue of pre-emption under 29 U.S.C. § 1144(a), there would typically remain the question of whether the complete preemption doctrine recognized in *Taylor* will transfer the state law claims into federal claims under 29 U.S.C. § 1132(a). *See Taylor*, 481 U.S. at 67, 107 S.Ct. at 1548. However, as Eubanks' amended complaint asserts an ERISA claim as an alternative to the state law claims, the ERISA claim will serve as the basis for federal jurisdiction. Accordingly, Eubanks' motion to remand will be denied. Eubanks' state law claims will not be considered as they are preempted under 29 U.S.C. § 1144(a) because they "relate to" an employee benefit plan.

**B. Eubanks' Motion to Consider Eubanks' Motion for Summary Judgment and Brief as Opposition to Prudential's Motion for Summary Judgment**

■ Prudential filed its motion for summary judgment on April 16, 2004. Rather than responding to Prudential's motion, Eubanks filed her own motion for summary judgment with accompanying brief on April 19, 2004. After receiving a letter from the Clerk's Office indicating that failure to respond to a motion for summary judgment may result in the motion being treated as unopposed, Eubanks filed the present motion. The court admonishes counsel for Eubanks that the proper method for responding to a motion for summary judgment is a response brief and not an additional motion for summary judgment. Responsive briefing is ultimately a benefit to the parties and the court as the opposing party has an opportunity to address and rebut each argument made in support of a motion. Nonetheless, the court will grant Eubanks' motion and consider Eubanks' motion for summary judgment as opposition to Prudential's motion for summary judgment.

**C. Prudential's Motion for Summary Judgment**

Summary judgment is appropriate where an examination of the verified pleadings, affidavits, and other proper discovery materials before the court demonstrates that there is no genuine issue of material fact, thus entitling the moving party to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Where such evidence could lead a reasonable juror to find for the party opposing summary judgment, a genuine issue of material fact exists and summary judgment may not be

granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). The basic question in a summary judgment inquiry is whether the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252, 106 S.Ct. at 2512.

■ Prudential offers two alternative bases for granting summary judgment in its favor. First, Prudential argues that its decision to terminate Eubanks' long term disability payments was valid under the benefits policy because Eubanks was no longer permanently disabled. Alternatively, if Eubanks is entitled to disability benefits under the plan, Prudential contends that she is precluded from recovery due to unintentional overpayments that exceed the amount Eubanks could recover under her present claim. These arguments will be addressed in turn.

■ In determining the standard of review for a denial of benefits under ERISA, a court must first decide whether the language of the plan grants the plan administrator discretion to determine the claimant's eligibility for benefits. *Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 268 (4th Cir.2002). If the plan grants discretion to the administrator, the standard of review is abuse of discretion. *Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518, 522 (4th Cir.2000). If, on the other hand, the plan does not grant discretion, this court's review of the decision is de novo. *Gallagher*, 305 F.3d at 268. Rather than requiring the use of "specific phrases" in a plan to grant discretion, the Fourth Circuit considers whether "the terms of a plan indicate a clear intention to delegate final authority to determine eligibility to the plan administrator." *Feder*, 228 F.3d at 522–23.

■ The policy in this case states:
'Total Disability' exists when Prudential determines that all of these conditions are met:

(1) Due to Sickness or accidental Injury, both of these are true:

(a) You are not able to perform, for wage or profit, the material and substantial duties of your occupation.

(b) After the Initial Duration of a period of Total Disability, you are not able to perform for wage or profit the material and substantial duties of any job for which you are reasonably fitted by your education, training or experience. The Initial Duration is shown in the Schedule of Benefits.

(2) You are not working at any job for wage or profit.

(3) You are under the regular care of a Doctor, unless you have reached the maximum point of recovery.

(Pl.'s Mot. Summ. J. Ex. A, Schedule of Benefits for Hourly Employees at 14.)[1] The prefatory language indicates that determination of disability is made by Prudential. (*Id.*) In an analogous case, the Fourth Circuit held that such language implicated the abuse of discretion standard. *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir.1995) ("[B]enefits will be paid 'only if CapitalCare determines' that certain conditions are met."). Therefore, the abuse of discretion standard will be applied in the instant case.

---

1. Although Eubanks should have received benefits under the hourly employees plan, the plan administrator improperly coded Eubanks as a salaried employee. The clause relating to the determination of total disability is the same in both policies. (Pl.'s Mot. Summ. J. Ex. A.)

 The discretionary actions of a fiduciary or plan administrator will not be overturned where they are reasonable and based on substantial evidence, even though the court might have come to a different independent conclusion. *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir.1997). Among other factors, the court may consider the following when determining the reasonableness of a benefits decision:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Booth v. Wal–Mart Stores, Inc. Assoc. Health & Welfare Plan*, 201 F.3d 335, 342–43 (4th Cir.2000).

On August 1, 2002, Prudential terminated Eubanks' disability benefits. Prudential's decision to terminate payments was made in reliance on the recommendation of its independent consultant, Dr. Gale Brown, and after review of Eubanks' medical record. (Def.'s Br. Opp'n Pl.'s Mot. Summ. J. at 5.) In determining Eubanks' entitlement to benefits, Prudential also had medical opinions from Drs. King and Blak-

ney, who served as Eubanks' treating physicians, as well as Dr. Bernstein, who conducted an independent examination at the behest of Prudential. Significantly, the recommendation of Dr. Brown, immediately preceding Prudential's denial of benefits, was made without physical examination. Dr. Brown concluded from review of Eubanks' record that, although some work restrictions were in order, "Ms. Eubanks appears capable of performing sedentary-light work at any occupation for which she is duly qualified." (Pence Aff. Ex. B at 236.) In contrast, doctors having conducted physical examinations of Eubanks tended to conclude that Eubanks was unable to work.

 Dr. Bernstein, having examined Eubanks pursuant to an independent medical evaluation performed at the direction of Prudential, issued a report, dated March 2, 2001, concluding that "I do not feel she is able to work at this point in time." (Pl.'s Br. Supp. Pl.'s Mot. Summ. J. Ex. F at 8.) Dr. Blakney submitted an evaluation form, dated August 2002, stating that Eubanks "cannot do manual work. Cannot sit, stand for prolonged periods." (*Id.* at 6.) On August 28, 2002, Dr. King completed an evaluation and responded to the question "[h]ow many hours of an 8–hour work shift can the claimant spend: Walking, Standing, Sitting." (*Id.* at 2.) The form offers three choices for each activity: "[l]ess than two, 2–4 hours, 4–6 hours." (*Id.*) In each category, Dr. King indicated that Eubanks could perform the activities listed for "[l]ess than two" hours. (*Id.*) Finally, on January 8, 2003, Dr. King wrote that Eubanks was "permanently disabled."[2] (*Id.* at 17.)

---

2. The strongest evidence supporting Eubanks' disability was submitted after February 20, 2003, the date the first appeal was decided. The court, though, cannot consider new evidence when reviewing a decision for abuse of discretion. *See Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co.*, 32 F.3d 120, 125

(4th Cir.1994) (holding that while "it may be appropriate for a court conducting a de novo review of a plan administrator's action to consider evidence that was not taken into account by the administrator, the contrary approach should be followed when conduct-

Prudential points out several inconsistencies in the opinions rendered by Drs. King and Blakney. In a functional capacities evaluation, completed August 28, 2002, Dr. King responded to the questions "In your opinion, is the claimant able to work? If so, what kind of work and under what conditions? If not, why not?" with the answer "sedentary duties only." (*Id.* at 4.) In August 2002, Dr. Blakney stated, when posed with the same question, "[Eubanks] cannot do manual work. Cannot sit, stand for prolonged periods." (*Id.* at 8.) Although both answers could be read, by themselves, to indicate that Eubanks could resume work in some capacity, these statements, taken as a whole, suggest that Eubanks could not engage in full time employment. The same form on which Dr. King indicated that Eubanks could perform "sedentary duties only" also indicated that she could walk, stand, or sit for less than two hours at a time. (*Id.* 19–21.) Dr. King's assessment that Eubanks could not maintain basic working positions for two hours casts serious doubt on her ability to perform any of the jobs cited in the termination letter dated February 20, 2003, including cashier, ticket taker, surveillance system monitor, or small part assembly worker, which, on their face, appear to require much greater stamina. (*See* Pence Aff. Ex. B at 277–78.)

Significant questions exist regarding the adequacy of the materials considered by Prudential and the degree to which they support Prudential's decision. Furthermore, because Prudential is at once the administrator and funder of the plan, a conflict of interest arises which justifies closer scrutiny. *See Smith v. Continental Cas. Co.*, 369 F.3d 412, 417 (4th Cir.2004). Therefore, a material issue of fact remains regarding whether Prudential abused its discretion in terminating Eubanks' disability benefits, and Prudential's motion for summary judgment will not be granted on this account.

■■■ As an alternative basis for summary judgment, Prudential argues that, even were Eubanks to prevail on her claim, any recovery would be completely offset by overpayments made to Eubanks under the plan. In essence, Prudential, as fiduciary, seeks a remedy whereby it can recoup monies that were improperly paid to a beneficiary under the plan. The types of relief available, though, are circumscribed by the provisions of ERISA. The civil enforcement section of ERISA permits an action:

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain

---

ing a review under ... the abuse of discretion standard"). Although a second appeal was instituted, *see* Pence Aff. Ex. B at 349, no decision on the appeal was ever rendered by Prudential, leaving only the first appeal for the court's review.

Therefore, the following opinions will not be considered in weighing Prudential's determination for abuse of discretion. In response to a letter from Prudential, dated February 20, requesting an opinion regarding whether Eubanks could perform certain light duty or sedentary occupations, Dr. King stated, on March 13, 2003, that "I have filled out papers indicating that she has limitations sitting, standing or moving. In my opinion, she can

return to no type of gainful employment." (*Id.* at 18.) Dr. King continues in the same letter to indicate that Eubanks is not fit for any of the light duty or sedentary occupations that Prudential had identified. (*Id.*) On March 14, 2003, Dr. Blakney stated:

> Mrs. Eubanks is totally disabled. She is not able to return to any type of manual labor. She is not able to do the light duty, or sedentary positions that are listed. She is not able to lift, stand or walk for any period of time .... In my medical opinion, to a reasonable degree of certainty, she is totally disabled from any type of work.

(*Id.* at 22.)

other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3). Prudential, appealing to the equitable relief accorded by this section, points to the decision in *Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), for the proposition that, while fiduciaries are precluded from bringing an action under ERISA for restitution at law, they may bring such actions in equity. (Def.'s Br. Supp. Summ. J. at 17.) Therefore, according to Prudential, any recovery due Eubanks should be reduced by the remedy of equitable restitution. The Court's decision in *Knudson*, though, is not as broad as Prudential suggests.

The Court in *Knudson* held that Great–West could not bring an action under ERISA to hold a defendant-beneficiary personally liable for amounts previously paid to a beneficiary. *Id.* at 221, 122 S.Ct. at 719. The Court construed an action seeking to impose general liability on the beneficiary as an action for "restitution at law," and found that ERISA could not support such an action. *Id.* at 221, 122 S.Ct. at 718–19. Rather, ERISA only provides for equitable relief thereby foreclosing all actions for restitution save those lying in equity. *Id.* The Court explained stating, "[f]or restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214, 122 S.Ct. at 714–15.

■ The holding in *Knudson* was limited to dismissing an action for restitution at law, therefore, statements in *Knudson* supporting actions for restitution in equity are properly construed as dicta. Nonetheless, courts have considered an action for restitution in equity as a viable method for relief under ERISA. *See Primax Recoveries, Inc. v. Young*, 83 Fed.Appx. 523 (4th Cir.2003); *Sealy, Inc. v. Nationwide Mut. Ins. Co.*, 286 F.Supp.2d 625 (M.D.N.C. 2003). Therefore, as stated in *Knudson*, restitution in equity is available "where money or property identified as belonging in good conscience to the plaintiff [can] clearly be traced to particular funds or property in the defendant's possession." *Knudson*, 534 U.S. at 213, 122 S.Ct. at 714.

■ In the present case, Prudential cannot satisfy the requirements for restitution in equity because it has not shown that Eubanks retains any amount of the overpayments, or any other monies rightly belonging to Prudential, in her possession. Where the funds traceable to overpayments are dissipated, establishing a general liability to be satisfied by another source, in this case any amounts due Eubanks for disability benefits wrongfully withheld, sounds in law rather than equity. *Knudson*, 534 U.S. at 213–14, 122 S.Ct. at 714 ("But where 'the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor,' and the plaintiff 'cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant].'") (quoting Restatement of Restitution § 215, Cmt. a (1936)). Therefore, Prudential may not recover funds from Eubanks under a theory of equitable restitution.

In essence, Prudential seeks to redirect purportedly wrongfully withheld disability payments from Eubanks toward indebtedness for overpayments made to Eubanks. Rather than raising questions regarding whether the relief requested is permitted by the civil enforcement section of ERISA, Prudential's request for an offset raises an often equally vexing question regarding the applicability of ERISA's anti-alienation provisions. ERISA requires that "each

532

pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). Furthermore, Treasury Department Regulations restrict the use of involuntary transfers of plan benefits, requiring that "benefits provided under the plan may not be anticipated, assigned (either at law or in equity), alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process." 26 C.F.R. § 1.401(a)–13(b)(1). Using withheld disability payments to compensate for overpayments made during the life of the plan appears to run headlong into the above quoted anti-alienation provisions.

▮▮▮ Fortunately, the Treasury Regulations directly address the instant case: "[t]he terms 'assignment' and 'alienation' do not include . . . (iii)[a]ny arrangement for the recovery by the plan of overpayments of benefits previously made to a participant." 26 C.F.R. § 1.401(a)–13(c)(2)(iii).[3] Authorizing a benefits plan to withhold benefits to compensate for prior overpayments is just such an "arrangement" authorized by section 1.401(a)–13(c)(2)(iii). *See Coar v. Kazimir,* 990 F.2d 1413, 1422 (3d Cir.1993) (noting that clause 13(c)(2)(iii) excludes from the anti-alienation restrictions an action by a benefits plan to offset overpayments against benefits); *Tucker v. General Motors Ret. Program,* 949 F.Supp. 47, 55 (D.Mass. 1996). In *Tucker,* a case with substantial similarities to this case, the court held that "set-offs of retirement benefits in order to recoup benefits overpayments by the Program are allowable under ERISA." 949

F.Supp. at 55. Although Tucker involved a setoff of benefits as they became due, rather than a setoff of benefits previously due, this difference, if anything, strengthens the basis for a setoff here. A prevailing policy behind the anti-alienation provision is the preservation of future income for presently accruing living expenses. *Guidry v. Sheet Metal Workers Nat'l Pension Fund,* 493 U.S. 365, 376, 110 S.Ct. 680, 687, 107 L.Ed.2d 782 (1990). In the present case, the vast majority of the setoff would merely recoup previously made overpayments. Therefore, a setoff in this instance is not only authorized by the Treasury Regulations, but it does not offend the overarching policy objectives of ERISA.

According to Michelle Pence, Manager of Disability Claims at Prudential, Eubanks was overpaid $18,991.81. (Pence Aff. ¶ 6.) These overpayments occurred when Prudential improperly coded Eubanks as a salaried rather than an hourly employee. Additional overpayments were found when Eubanks provided to Prudential in February 2002 a copy of her Social Security Disability Award dated September 15, 2000, awarding benefits of $826.00 per month beginning September 2000, and authorizing a retroactive payment of $10,662.00, representing benefits due Eubanks from August 1999 through August 2000.[4] These Social Security entitlements were not taken into consideration when determining Eubanks' benefit plan payments, thereby resulting in the overpayment. The maximum benefit recoverable under the plan were Eubanks to receive an

---

**3.** Great deference is given to the Treasury Regulations in interpreting ERISA. *United States v. Smith,* 47 F.3d 681, 682 (4th Cir. 1995) (calling the Treasury Regulations "binding"); *Tilley v. Mead Corp.,* 927 F.2d 756, 766, n. 1 (4th Cir.1991) ("[T]here is a strong presumption in favor of the validity of Treasury Regulations.").

**4.** From August 1999 through November 1999, Eubanks was entitled to a social security benefit in the amount of $807.10. Due to a cost-of-living adjustment in December 1999, the benefit amount increased to $826.00. (Pence Aff. Ex. B, at 171.)

award of benefits from August 1, 2002 through May 4, 2015, is $15,300.00. (Def.'s Br. Supp. Summ. J. at 17, n. 19.) Because Eubanks cannot recover an amount in excess of the overpayments, she cannot prevail on her claim.

Eubanks responds by stating "[t]here can not be a set-off if Plaintiff never received money from Social Security. There were no payments made by Social Security between August 1999 and August 2000." (Pl.'s Br. Supp. Summ. J. at 8.) No evidence was submitted regarding whether Eubanks actually received the Social Security benefits to which she was entitled. However, the benefits contract allows for an offset amount for Social Security disability payments that are "payable to you . . . or would be so payable if timely claim for them were made." (Pl.'s Br. Supp. Summ. J. Ex. A, Schedule of Benefits for Hourly Employees at 22–23.) Therefore, the plan does not require that benefits were actually paid, and Eubanks has not rebutted Prudential's evidence showing that Eubanks was entitled to the above mentioned Social Security payments. Additionally, the court notes that although there were no payments made from August 1999 through August 2000, the Notice of Award issued by the Social Security Administration states "[y]ou will receive $10,662.00 around September 21, 2000. This is the money you are due for August 1999 through August 2000." (Pence Aff. Ex. B at 171.) For these reasons, summary judgment will be granted in Prudential's favor.

### D. Eubanks' Motion for Summary Judgment

For the reasons stated above, Eubanks is not entitled to recover on her ERISA claim against Prudential as a matter of law. Since her state law claims are preempted by ERISA, she has no cause of action remaining to pursue against Pru-

dential. Therefore, Eubanks' motion for summary judgment will be denied.

## IV. CONCLUSION

For the reasons set forth above, the court will deny Eubanks' Motion to Remand. Eubanks' Motion to Consider Eubanks' Brief in Support of Her Motion for Summary Judgment as Opposition to Prudential's Motion for Summary Judgment will be granted. Additionally, Prudential's Motion for Summary Judgment will be granted and Eubanks' Motion for Summary Judgment denied.

A judgment in accordance with this memorandum opinion shall be filed contemporaneously herewith.

### JUDGMENT

For the reasons set forth in the memorandum opinion entered contemporaneously herewith,

IT IS ORDERED that Plaintiff's Motion to Remand [8] is DENIED.

IT IS ORDERED that Plaintiff's Motion to Consider Plaintiff's Motion for Summary Judgment and Brief as Opposition to Defendant's Motion for Summary Judgment [37] is GRANTED.

IT IS ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment [22] is GRANTED. IT IS ORDERED that Plaintiff's Motion for Summary Judgment [26] is DENIED.