**Carla H. HARVEY, Plaintiff,**

v.

**ASTRA MERCK INC. LONG TERM DISABILITY PLAN; Unum Life Insurance Company of America; Unumprovident Corporation; and Astrazeneca Pharmaceuticals Limited Partnership Defendants.**

**No. 1:03CV00334.**

United States District Court, M.D. North Carolina.

Dec. 1, 2004.

Robert M. Elliot, Elliot Pishko Morgan, P.A., Winston–Salem, NC, for Plaintiff.

George K. Evans, Jr., Erna A.P. Womble, Womble, Carlyle, Sandridge & Rice, Winston–Salem, NC, M. Daniel McGinn, Brooks, Pierce, McLendon, Humphrey & Leonard, Greensboro, NC, for Defendant.

## MEMORANDUM OPINION

BEATY, District Judge.

This case involves an action by Plaintiff Carla H. Harvey ("Plaintiff" or "Ms. Harvey") to recover disability benefits under a long-term disability policy issued by Defendant Unum Life Insurance Company of American ("Unum"). This action is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"). This matter is presently before the Court on Defendants' Motion for Summary Judgment [Document # 30], Defendants' Motion to Strike Jury Trial Demand [Document # 33], and Plaintiff's counter-Motion for Summary Judgment [Document # 35].

### I. FACTUAL BACKGROUND

Plaintiff is a 43–year–old female who suffers from Multiple Sclerosis ("MS"). She obtained a Bachelor of Science Degree in Business Administration from the University of North Carolina at Greensboro in

1989, and began work as a pharmaceutical sales representative for Merck, Inc., which was the predecessor of Defendant AstraZeneca Pharmaceuticals Limited Partnership ("AstraZeneca"). Except for a brief period with another employer, Plaintiff worked for Merck, Inc. and its successor until 1997 when she became unable to continue working. Plaintiff was involved in an automobile accident in June 1997, which exacerbated the symptoms of her MS. MS is a progressive neurological disorder resulting in tissue damage in the brain. Plaintiff continued to try to work for several months, but ultimately was unable to work due to her fatigue, tiredness, headaches, weakness, memory trouble, cognitive ability, sensory abnormalities, bladder and bowel dysfunction, and similar symptoms related to her MS. The MS causes dizziness, lack of coordination, and severe pain. According to Plaintiff's physicians, eventually her spinal column will be affected by the disease and she will be bound to a wheelchair.

Through her employer, Plaintiff was covered by a long-term disability policy issued by Unum to Astra Merck, Inc. ("the Policy"). The Policy provides benefits for disability after a 180–day elimination period. The Policy defines "disability" as follows:

> You are disabled when UNUM determines that:
>> -You are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and
>> -You have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.
> You will continue to receive payments beyond 24 months if you are also:

>> -Working in any occupation and continue to have a 20% or more loss in your indexed monthly earnings due to your sickness or injury; or

>> -Not working and, due to the same sickness or injury, are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience."

(Affidavit of April Atkinson [Doc. # 32] Ex. A at 926.)[1] The Policy defines "limited" as "what you cannot or are unable to do" and defines "regular occupation" as "the occupation you are routinely performing when your disability begins." (Id.)

Plaintiff applied for benefits in 1998 when she was no longer able to work. Unum approved her claim and provided her with long-term disability benefits through June 2000. Plaintiff also began receiving Social Security Disability Benefits, based on a determination by the Social Security Administration that Plaintiff had been totally disabled from any "gainful employment activity" since December 15, 1997. However, Unum undertook an additional review of Plaintiff's claim beginning in late 1999, culminating in a decision to terminate Plaintiff's benefits on June 30, 2000. Plaintiff appealed this decision and provided Unum with additional records. Unum upheld its decision on October 17, 2000 and January 25, 2001. Plaintiff's counsel then submitted additional evidence and documentation to Unum. Unum acknowledged receipt of this additional information by letter dated December 4, 2002, and indicated that they would review the information and make a determination of Plaintiff's claim. By letter dated January 23, 2003, Unum affirmed its prior denial

---

1. Defendants submitted a copy of the Policy and of Plaintiff's entire claim file as Exhibit A to the Affidavit of April Atkinson [Doc. # 32]. The Court will refer to documents in this file as "Ex. A" with reference to the appropriate Bates number/page number.

and refused to consider the additional material based on the fact that Plaintiff had already appealed the decision and a final determination had previously been made.

Plaintiff then filed the present suit challenging the denial of benefits on the basis that Unum's decision was not reasonable, was not supported by substantial evidence, and was not the result of a deliberate, principled reasoning process. Plaintiff and Defendants have both moved for summary judgment, and Defendants have also moved to strike Plaintiff's jury trial demand. The Court will consider Defendants' Motion to Strike in turn, but the Court will first consider the parties' cross-motions for summary judgment to determine if any genuine issues of material fact exist for trial.

## II. MOTIONS FOR SUMMARY JUDGMENT

### A. Standard of Review

■ Summary judgment is appropriate when an examination of the materials properly before the Court reveals that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is considered "material" if it "might affect the outcome of the suit under the governing law ...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). When ruling on a summary judgment motion, the Court "view[s] the evidence in the light most favorable to the non-moving party, granting that party the benefit of all reasonable inferences." *Bailey v. Blue Cross & Blue Shield of Va.*, 67 F.3d 53, 56 (4th Cir.1995). As a result, the Court will only enter summary judgment in favor of the moving party when " 'the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively

that the [nonmoving] party cannot prevail under any circumstances.' " *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir.1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co.*, 381 F.2d 245, 249 (4th Cir.1967)).

■ Because this case arises under ERISA, the Court must evaluate the summary judgment motions in the context of the proper standard of review under ERISA. To determine the proper standard of review under ERISA, the Court must first determine whether the Policy grants the plan administrator discretion to determine a claimant's eligibility for benefits. If the Policy does not grant discretion to the plan administrator, the Court will use a de novo standard of review. However, if the Policy grants discretion to the administrator, an abuse of discretion standard is applied. *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 605 (4th Cir.1999).

■ In the present case, the Policy expressly grants discretionary authority to Unum "to determine ... eligibility for benefits and to interpret the terms and provisions of the policy." (Ex. A at 919.) Therefore, the Court will review Unum's denial of benefits based on an abuse of discretion standard. Under this standard, Unum's decision will not be disturbed if it "is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Elliott*, 190 F.3d at 605. The Court will not substitute its judgment for that of the plan administrator, and Unum's decision will be upheld if it is reasonable and based on substantial evidence, even if the Court might have come to a different independent conclusion.

The Court of Appeals for the Fourth Circuit has listed a number of factors that courts may consider when determining the reasonableness of a benefits decision:

(1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Booth v. Wal–Mart Stores, Inc. Assoc. Health & Welfare Plan*, 201 F.3d 335, 342–43 (4th Cir.2000). In *Booth*, the Fourth Circuit also noted that "[a] fiduciary's conflict of interest, in addition to serving as a factor in the reasonableness inquiry, may operate to reduce the deference given to a discretionary decision of that fiduciary. We have held that a court, presented with a fiduciary's conflict of interest, may lessen the deference given to the fiduciary's discretionary decision to the extent necessary to neutralize any untoward influence resulting from that conflict." *Id.* at 343 n. 2.

In the present case, Plaintiff contends that the following factors are particularly relevant in establishing the abuse of discretion in Unum's decision to terminate Plaintiff's disability benefits: (1) the adequacy of the materials considered to make the decision and the degree to which they support it; (2) whether the decisionmaking process was reasoned and principled; and (3) the fiduciary's motives and any conflict of interest it may have. The Court will therefore consider each of these factors in turn. However, before considering these factors, the Court must first address the dispute between the parties regarding the proper scope of the evidence to be considered in evaluating Unum's decision.

**B. Scope of Evidence to Be Considered**

There is dispute between the parties regarding what evidence the Court may properly consider when reviewing Unum's decision under the abuse of discretion standard. The parties agree that the Court may consider all of the evidence submitted with regard to Plaintiff's claim through January 25, 2001, the date when Unum denied Plaintiff's appeal. However, Plaintiff also seeks to present additional evidence submitted after that date. Plaintiff contends that Unum accepted this evidence for review, and by letter dated December 4, 2002, Unum represented that it would "make a determination on your client's claim within 60 days after receipt of your appeal." The additional evidence submitted after January 25, 2001 is included in Defendants' Exhibit A as part of the "Administrative Record of Unum Life's adjudication of Plaintiff's claim for disability benefits." (Affidavit of April Atkinson [Doc. # 32].)

■■■ The Court of Appeals for the Fourth Circuit has directed that "[w]hen a district court reviews a plan administrator's decision under the abuse of discretion standard, an assessment of the reasonableness of the administrator's decision must be based on the facts known to it at the time." *Elliott*, 190 F.3d at 608 (internal quotations omitted); *see also Eubanks v. Prudential Insurance Company of America*, 336 F.Supp.2d 521, 529 n. 2 (M.D.N.C. 2004) ("The strongest evidence supporting [plaintiff's] disability was submitted after ...the date the first appeal was decided. The court, though, cannot consider new evidence when reviewing a decision for abuse of discretion."). In this regard, "evidence, including expert opinion, that assists the district court in understanding the medical terminology or practice relat-

ed to a claim would be equally admissible. However, the district court is precluded from receiving evidence to resolve disputed material facts—i.e., a fact the administrator relied on to resolve the merits of the claim itself." *Vega v. National Life Insurance Services, Inc.*, 188 F.3d 287, 299 (5th Cir.1999).

■ In applying this standard to the present Motions for Summary Judgment, the Court will consider only the evidence that was included in Plaintiff's claim file prior to the January 25, 2001 decision by Unum. Thus, the Court will consider only the evidence that was before Unum as of January 25, 2001 to determine if genuine issues of fact exist regarding whether Unum's decision was an abuse of discretion.[2] The Court will now turn to an evaluation of that evidence based on the relevant factors discussed above.

### C. Review of Unum's Determination Based on Relevant Factors

As noted above, the following factors are particularly relevant in reviewing Unum's decision to terminate Plaintiff's disability benefits: (1) the adequacy of the materials considered to make the decision and the degree to which they support it; (2) whether the decisionmaking process was reasoned and principled; and (3) the fiduciary's motives and any conflict of interest it may have. The Court will consider each of these factors in turn to determine if a genuine issue of material fact exists regarding any potential abuse of discretion by Unum in terminating Plaintiff's benefits.

### 1. Scope and Content of Materials Considered

Plaintiff contends that Unum failed to consider all of the evidence, and that the evidence that Unum did rely upon does not support Unum's determination of denial of benefits. Unum apparently relied on three primary pieces of evidence in making the decision to terminate Plaintiff's benefits. First, Unum commissioned a surveillance of Plaintiff for approximately one week during February 2000. Portions of the surveillance were captured on videotape. This videotape, at best, shows Plaintiff going to the store, trying to get gas, going to the drive-thru pharmacy, and running similar errands during the course of the week. Unum, however, characterizes the videotape as showing that Plaintiff has "normal fluid movements with no visible impairment or limitation in walking and carrying objects." (Defendants' Brief in Support of Motion for Summary Judgment at 8.) Unum's medical consultant, Dr. Leonard Sutton, viewed the videotape and concluded that Plaintiff was "unequivocally vibrant in activity—gait is conducted [with] ease of motion and free of impedances." (Ex. A at 513.) However, Plaintiff contends that the videotape actually shows her limping and having difficulty with some movements, as well as becoming fatigued and needing to rest after running errands. Plaintiff also notes that the tape confirms her claim that she suffered from cognitive impairments, because it shows her pulling up to a pump to get gas, but then shows that she becomes confused and unable to remember how to operate the gas pump. The videotape then shows that Plaintiff ultimately drives off without get-

2. However, before commencing the trial in this matter, the Court will allow the parties to address the issue of whether any additional information was presented to and accepted by Unum for review, and whether the additional information should be considered at trial on that basis. Given that this matter will be scheduled as a bench trial, as discussed below, the Court will allow the parties to address this issue further at trial before determining the proper scope of evidence to be allowed during the trial in this matter.

ting gas. (Plaintiff's Exhibits in Support of Motion for Summary Judgment, Ex. 5 at 156, Ex. 9 at 186.)

The second primary piece of evidence relied upon by Unum are the records of Dr. Dale Menard, a physician who saw Plaintiff five times over a two year period from February 1998 to March 2000. Unum notes that according to Dr. Menard, Plaintiff was not taking any medication for multiple sclerosis in March 2000. Dr. Menard's records for December 21, 1999 note that Plaintiff was doing better and her energy level has improved, although "she is taking mid-day naps." (Ex. A at 534.) In evaluating Plaintiff's claim, Unum provided Dr. Menard with a copy of the surveillance video. Unum's medical consultant, Dr. Sutton, then conferred with Dr. Menard by telephone. It appears that as a result of his viewing the videotape and speaking with Dr. Sutton, Dr. Menard signed Unum's letter indicating that Plaintiff had full time sedentary/light work capacity without restriction. (Ex. A at 459.) However, it is unclear whether Dr. Menard gave any medical opinion to Unum regarding Plaintiff's cognitive abilities or neurological impairments as a result of the MS. It is also unclear what information Unum provided to Dr. Menard, and what other information Dr. Menard may have provided to Dr. Sutton during their telephone conversations. In contrast to Dr. Menard simply reviewing Unum's letter, Dr. Menard's notes indicate that Plaintiff's initial MRI was "quite dramatic." (Ex. A at 310.) It was of such a nature that Dr. Menard subsequently advised Plaintiff that she should be evaluated for "her cognitive and executive processing." (Ex. A at 315.) It is unclear, however, whether Dr. Menard provided information to Unum regarding Plaintiff's cognitive abilities, or whether any such evidence was considered by Unum in evaluating Mr. Menard's opinion. However, a Unum nurse who reviewed Dr. Menard's records indicated that "[t]here is mention of some cognitive problems mentioned in the office notes of Dr. Menard (Neuro). Formal evaluation may be needed to clarify the severity." (Ex. A at 541–42.) It does not appear that Unum followed through on this request. Plaintiff also explained at several points during the appeal process that Dr. Menard could not fully evaluate her cognitive difficulties because he had never performed an MRI or undertaken any neuropsychological testing. (Ex. A at 469, 476.) It is unclear whether this information was considered by Unum in its determination of the proper weight to give Dr. Menard's opinion in making the denial determination.

Finally, the third primary piece of evidence relied upon by Unum was based upon a review that Unum undertook after Plaintiff appealed the decision to terminate her benefits. Following Plaintiff's appeal, another of Unum's consulting physicians, Dr. Broda, reviewed Plaintiff's submissions and concluded that she had "minimum physical exam findings." (Ex. A at 379.) Dr. Broda also noted that while there had been complaints by Plaintiff of fatigue and cognitive problems, Plaintiff had not documented such problems. (Ex. A at 376, 379.) Thus, Dr. Broda apparently rejected the contention that Plaintiff suffered from any cognitive problems that could affect her ability to return to work. However, it is unclear what Dr. Broda relied on as the basis for this conclusion or whether Dr. Broda had any experience with MS or similar conditions, since the information submitted by Plaintiff actually seems to indicate considerable cognitive impairments. For example, part of Dr. Broda's review would have included a report by Dr. Schmidt, one of Plaintiff's treating physicians at Guilford Neurological. Dr. Schmidt's report indicated that Plaintiff

was "experiencing some neurological deficits" in addition to problems with balance and dizziness. Dr. Broda's review would also have included the records of another of Plaintiff's treating physicians, Dr. Smith, which indicated "no probability that she could resume her previous occupation." (Ex. A at 385, 389.) In addition, Unum's records indicate that on multiple occasions, Unum nurses who reviewed Plaintiff's file commented that they needed to obtain an MRI to determine the extent of Plaintiff's cognitive impairment. (See, e.g., Ex. A at 43, 814 ("Rec: MRI, which we do not have ... please obtain for future management."); Ex. A. at 541–542 ("Formal evaluation of any suspected cognitive impairment is not available in the file for review.")) Examination of an MRI is significant for evaluating Plaintiff's impairment because the MRI depicts the physical damage to the brain caused by MS in the form of lesions or "black holes." Unum apparently never followed-through on this request by its own nurses, although Plaintiff indicated a willingness to undergo whatever testing Unum required to evaluate her claim. (See, e.g., Ex. A at 469 (notes from telephone call with Plaintiff on July 12, 2000 in which Plaintiff "said she has more than 60 lesions & If she needs to she will do the MRIs to show us how severe her MS is.")) Unum apparently never requested that Plaintiff undergo an MRI, despite the multiple notes and recommendations in Plaintiff's file indicating that an MRI was needed to evaluate her claims of cognitive impairment. Plaintiff therefore contends that Unum did not fairly consider all the information before it or request the information it needed prior to making its determination.

Plaintiff also contends that Unum failed to consider other evidence provided by Plaintiff, including forms and reports from Dr. Schmidt, who noted that Plaintiff was entering into a "chronic/progressive phase" of MS in June 1998. (Ex. A at 290.) In her appeal, Plaintiff submitted an analysis of her condition by Dr. Schmidt, who noted that "cognitive difficulties and fatigue are well-known accompaniments of multiple sclerosis and are hard to quantify on examination but are major factors in limiting an individual's ability to work.... In reviewing [Plaintiff's] MRI, it is certainly understandable that she should be experiencing some neurological deficits, and I imagine that if MRI were repeated today, that the abnormalities would be even more impressive." (Ex. A at 384–386.) Dr. Schmidt also noted that Plaintiff's ongoing problems include "memory difficulties .. aches and pains, problems with her balance and dizziness ... numbness and perithecia, bladder difficulties, and excessive fatigue." (Id.) Dr. Schmidt concluded that he "would support her continued long term disability status." (Id.) Similarly, Plaintiff's other evidence included the records of another of Plaintiff's regular physicians, Dr. Smith, who submitted an analysis indicating "a significant degree of impairment ... difficulty with bladder control/ urgency ... severe fatigue is also a problem ... she is not likely to be employable ... significant impairments due to her illness, and I very much doubt that she is employable in the workplace, and see no probability that she could resume her previous occupation." (Ex. A at 389.)

■ In contrast, Defendants contend that the proper materials were considered, and that the content of those materials in fact supports Unum's decision. In particular, Unum points to the letter from Dr. Menard agreeing that Plaintiff has sedentary/light work capacity, the results of the surveillance and videotape, the fact that Plaintiff was not taking any medications for MS, and the reviews of Plaintiff's records by Unum's physicians, Dr. Sutton and Dr. Broda. However, for the reasons dis-

cussed above, the Court concludes that there are genuine issues of material fact regarding the adequacy of the materials considered by Unum in making its decision and the degree to which the evidence that Unum did review supports Unum's decision to terminate Plaintiff's benefits. In particular, it is unclear whether Unum considered all of the evidence regarding Plaintiff's cognitive impairments and fatigue in making its determination. It also appears that Unum concluded that there was insufficient evidence of cognitive impairments, without considering the information provided by Plaintiff's treating physicians and without obtaining the MRI that Unum's own nurses determined was necessary to evaluate Plaintiff's cognitive difficulties. Based on this record, the Court concludes that there are genuine issues of fact that must be resolved regarding the materials that Unum considered and whether those materials in fact provide sufficient evidence to support Unum's decision.

### 2. Nature of Decision–Making Process

Plaintiff also contends that the decision-making process undertaken by Unum was not principled or reasoned. For example, Plaintiff contends that Unum placed considerable weight on the surveillance video, without considering that information in light of Plaintiff's records and actual medical condition. In evaluating the surveillance video, Plaintiff's expert notes that "multiple sclerosis is a progressive neurological disorder. While Ms. Harvey may be able to walk into a store and carry out a bag of groceries or go into the post office to mail a package, this is not indicative of her cognitive deficits or of her ability to sustain regular work over the course of a full-time workday." (Exhibits in Support of Plaintiff's Motion for Summary Judgment, Ex. 6 at 161.)

Plaintiff also contends that Unum focused exclusively on the physical aspects and requirements of Plaintiff's occupational description, without considering the mental and cognitive abilities necessary. In this regard, Unum reviewed the occupational description of a Pharmaceutical Representative and determined that Plaintiff could perform the position based on the physical requirements, but there is no information in the record regarding Unum's consideration of the cognitive requirements of the occupation. According to the occupational description included in Plaintiff's file, a pharmaceutical dealer informs customers of new drugs, including characteristics, clinical studies, dosages, use, and effects. (Ex. A at 394.) The occupational description used by Unum describes the position as "light work" with regard to strength, but also notes that the position requires "Influencing People, Making Judgments and Decisions" and requires high aptitude in "General Learning Ability" and "Verbal Aptitude." (Ex. A at 495.) Unum determined that Plaintiff was not totally disabled from this occupation based on the physical requirements of the position, but it is unclear whether Unum ever considered the cognitive requirements of the position, which are particularly at issue given the evidence Unum itself had and the evidence proffered by Plaintiff relating to a need to determine the extent of Plaintiff's mental and cognitive abilities. (Ex. A at 493.) In addition, Unum relied on a Functional Capacity Evaluation that concluded that Plaintiff could perform a sedentary level of activity. (Ex. A at 390–391.) However, this form also does not include any evaluation of her cognitive abilities or the effect of her fatigue on her ability to work.[3]

---

**3.** In this regard, the Court also notes that

Plaintiff's records include only information

Finally, Plaintiff contends that Unum's decision-making process was focused more on looking for avenues to deny Plaintiff's claim rather than actually evaluating Plaintiff's condition. For example, Unum representatives concluded that Plaintiff was not disabled based in large part on the videotape, and were enthusiastic when the videotape surveillance showed Plaintiff running errands, noting "Great job in C/M!!!" on Plaintiff's review sheet. (Ex. A at 578.) The Court notes that Unum apparently put Plaintiff's claim into a "posture-denial" as a result of an internal roundtable review, based on Plaintiff's prescription list and the activity shown on the surveillance tape. (Ex. A at 580.) The record does not show whether Unum considered the videotape as to how it may have reflected upon Plaintiff's actual medical condition. Plaintiff suggests that the video is in fact consistent with her medical condition, which involves cognitive difficulties and fatigue more than an inability to walk or run errands. Plaintiff raises the point that Unum did not provide a copy of the videotape to Plaintiff or allow her to comment on it until after her benefits had been terminated.

 In contrast, Defendants contend that the decision-making process was principled and well-reasoned. Defendants note that multiple Unum physicians and nurses reviewed Plaintiff's file, Plaintiff's physician Dr. Menard was consulted, and Plaintiff was provided with a full appeal process and opportunities to provide additional information. However, Plaintiff has raised material questions regarding this process. Therefore, after reviewing all of the evidence in the record, for the reasons discussed above, the Court concludes that there are genuine issues of material fact regarding the decision-making process employed by Unum and whether that process was in fact principled and reasoned.

### 3. Unum's Motives and Conflict of Interest

Finally, Plaintiff notes that Unum acts as plan administrator, but also acts as insurer and directly pays the disability benefits under the Policy. Therefore, Unum's conflict of interest must also be considered in determining whether Unum's decision was reasonable and supported by substantial evidence. Plaintiff contends that Unum's decision was motivated by its financial concerns, and that Unum failed to fulfill its fiduciary obligation under ERISA to administer the Policy in a fair and impartial manner. Under ERISA, a fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104. Plaintiff contends that Unum failed to satisfy this requirement and that the evidence indicates that Unum was motivated by its efforts at cutting costs. Plaintiff also contends that Unum's claims handlers denied claims they knew were legitimate in order to meet Unum's financial targets.

 For their part, Defendants concede that where an entity such as Unum has "dual roles" as both the plan administrator and insurer of the plan ben-

regarding her ability to work in her "own occupation." In its briefing, Defendants appear to now raise the contention that Plaintiff was not disabled because she could have worked in some other occupation. However, it appears from the record that the actual decision by Unum was that Plaintiff was not totally disabled from her "own occupation" and "can perform her own occupation." (Ex. A at 493; Ex. A at 23–25 ("Claim denied— Not TD own occ.")) As such, this Court must review the actual decision made by Unum, rather than any new hypothesis regarding other occupations that Plaintiff could possibly have performed, but that were not considered by Unum in making its determination.

efits, the Court should weigh the conflict of interest as a factor in analyzing the reasonableness of the decision. However, Unum contends that its decision was supported by substantial evidence even if the potential conflict of interest is considered. Based on the record before the Court, the Court concludes that Unum's potential conflict of interest must be considered in evaluating Unum's determination to terminate Plaintiff's benefits. After reviewing all of the evidence, the Court concludes that at this time there are genuine issues of fact regarding Unum's motives and the extent to which Unum's conflict of interest affected Unum's determination in Plaintiff's case.

### D. Conclusion With Respect to Summary Judgment

For the reasons discussed above, the Court concludes that there are genuine issues of fact regarding the evidence considered by Unum, the content of that evidence, the decision-making process used by Unum, and the motivation and potential conflict of interest by Unum. Therefore, the Court finds that summary judgment is not appropriate in favor of either party at this time, and both parties' Motions for Summary Judgment will be denied.

### III. MOTION TO DISMISS CERTAIN PARTIES

In its Motion for Summary Judgment, Defendants also contend that Defendants AstraZeneca and UnumProvident Corporation ("UnumProvident") are not proper parties based on the evidence before the Court, although Defendants concede that the claim administrator (Unum) and the Plan itself are proper defendants pursuant to 29 U.S.C. § 1132. Defendants contend that Plaintiff's employer, AstraZeneca, cannot be liable because it did not retain any authority to make a final claim deci-

sion on the administration of the Plan. Defendants also contend that there is no evidence supporting Plaintiff's claim against UnumProvident because UnumProvident's only involvement in this case is as the parent company of Unum.

In Plaintiff's Response, Plaintiff states that she "will not contest Unum's argument that defendant AstraZeneca Pharmaceuticals Limited Partnership and UnumProvident Corporation are not proper parties to this action based on the record of this action." (Plaintiff's Brief in Response [Doc. # 39] at 2 n. 4). Therefore, the Court will grant Defendants' Motion for Summary Judgment [Doc. # 30] in this respect, so as to order that all claims against Defendants AstraZeneca Pharmaceuticals Limited Partnership and UnumProvident Corporation will be dismissed.

### IV. JURY TRIAL DEMAND

 Finally, Plaintiff's Complaint includes a request for a jury trial in this matter. Defendants filed a Motion to Strike the Jury Trial Demand [Doc. # 33]. Plaintiff has not responded to this Motion. This Court has previously held that it "is still good law in the Fourth Circuit that ERISA actions are equitable in nature and are for the Court to decide rather than the jury." *See Lawrence v. Continental Cas. Co.,* No. 1:97CV00980, 1998 U.S. Dist. LEXIS 15108, at *12 (M.D.N.C. June 10, 1998). Thus, to the extent that Plaintiff requests a jury trial for her claims under ERISA, her request is denied, and Defendants' Motion to Strike Jury Trial Demand [Doc. # 33] is granted.

### V. CONCLUSION

For the reasons discussed above, the Court concludes that genuine issues of material fact must be resolved in order to determine whether Unum's decision to terminate Plaintiff's disability benefits was an

abuse of discretion. Therefore, Defendants' Motion for Summary Judgment [Doc. # 30] and Plaintiff's Motion for Summary Judgment [Doc. # 35] are DENIED. However, to the extent that Defendants' Motion for Summary Judgment [Doc. # 30] also seeks to dismiss Defendants AstraZeneca Pharmaceuticals Limited Partnership and UnumProvident Corporation, that Motion is GRANTED. Defendants' Motion to Strike Jury Trial Demand [Doc. # 33] is also GRANTED. This matter will therefore be heard as a bench trial, and is presently scheduled for the civil term of court beginning January 3, 2005.

### ORDER

This matter is presently before the Court on Defendants' Motion for Summary Judgment [Document # 30], Defendants' Motion to Strike Jury Trial Demand [Document # 33], and Plaintiff's counter-Motion for Summary Judgment [Document # 35]. For the reasons discussed in the Memorandum Opinion filed contemporaneously herewith, the Court concludes that genuine issues of material fact must be resolved in order to determine whether Unum's decision to terminate Plaintiff's disability benefits was an abuse of discretion. Therefore, Defendants' Motion for Summary Judgment [Doc. # 30] and Plaintiff's Motion for Summary Judgment [Doc. # 35] are DENIED.

However, to the extent that Defendants' Motion for Summary Judgment [Doc. # 30] also seeks to dismiss all claims against Defendants AstraZeneca Pharmaceuticals Limited Partnership and Unum-Provident Corporation, that Motion is GRANTED, and all claims against Defendants AstraZeneca Pharmaceuticals Limited Partnership and UnumProvident Corporation are hereby DISMISSED.

Defendants' Motion to Strike Jury Trial Demand [Doc. # 33] is also GRANTED.

This matter will therefore be heard before this Court as a bench trial, and is presently scheduled for the civil term of court beginning January 3, 2005.